**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| *ex rel.* **SAM McCAHON,** ) | **Civil Action** |
| ) | **No. 20-CV-0343 (ACR)** |
| *Plaintiff,* ) | |
| *v.* ) | **QUI TAM COMPLAINT** |
| ) | **FOR VIOLATION OF THE** |
| **DYNCORP INTERNATIONAL INC.;** ) | **FEDERAL FALSE CLAIMS ACT** |
| **DYNCORP INTERNATIONAL LLC;** ) | **31 U.S.C. §§ 3729 *ET SEQ*.** |
| **DYNCORP INTERNATIONAL, FZ-LLC;** ) | |
| **WORLDWIDE RECRUITING & STAFFING** ) | **JURY TRIAL DEMANDED** |
| **SERVICES, LLC,** ) | |
| ) | **REDACTED/NOT SEALED** |
| *Defendants.* ) | **FOR FILING ON PACER** |
| ) | |

October 22, 2024

F. Franklin Amanat (DC Bar 433779)
MOTLEY RICE LLC
800 Third Avenue, Suite 2401
New York, New York 10022
(212) 577-0052
famanat@motleyrice.com

*Counsel for Plaintiff-Relator Sam McCahon*

### COMPLAINT

### INTRODUCTION

This is an action filed under the *qui tam* provisions of the False Claims Act (FCA),

31 U.S.C. §§3729 *et seq.*; The Anti-Kickback Act, 41 U.S.C. §§87, *et. seq.*; and Common

Law by the Plaintiff/Relator Sam W. McCahon, in the name of the United States government

and himself to recover civil fines and damages arising from illegal conduct related to the

performance of the LOGCAP IV contract, Task Order 0004 (The Contract).

The Defendants willfully and knowingly engaged in numerous patterns of practices in

violation of the FCA by charging the Government for services provided in violation of the

contract terms and conditions, applicable laws and their implementing regulations identified

in Paragraphs 1-2.  Defendants also willfully failed to make mandatory reports of misconduct.

1.      The conduct forming the basis for knowingly submitting fraudulent claims for

payment to the government in violation of the FCA involved several thousand actions

involving: non-compliance with the Anti-Kickback Act of 1986, 41 U.S.C. §§87, *et seq.*

(AKA); making False Statements in support of the submission of claims and requests for

payment; non-compliance with the 13th Amendment to the United States Constitution, U.S.

const. amend. XIII, insofar as it renders involuntary servitude illegal; noncompliance with the

Trafficking Victims Protection Reauthorization Act (TVPRA) 22 U.S.C. §§7100 *et seq.* in the

scheme Defendants used to recruit and retain workers who performed Base Life Support

Services (BLS) under Task Order 0004; violations of the Fraud in Foreign Labor Contracting

Act (FFLCA),18 U.S.C §1351 in the use of fraud and deceptive hiring in the recruiting and

causing others to recruit workers from developing nations to work on LOGCAP IV,

Task Order 0004; making false Statements and false Certifications to the U.S. government to

induce the exercise of the Option years continuing the length of performance of the Contract under Task Order 0004; and, by making false statements and fraudulently concealing violations of the AKA, FFLCA and TVPRA in order to avoid adverse consequences, including negative annual performance ratings and consequential award fee reductions, fixed fee ineligibility, and adversely impacting the DynCorp International, LLC's prospects of future contract awards from the U.S. government; and failing to engage in the mandatory reporting of violations identified in this Complaint; fraudulently billing for unallowable costs; and counts under Common Law.

2.        The Defendants' use of human trafficking, fraud, deceptive hiring and kickbacks to provide labor services under Task Order 0004 was so prolific and pervasive, the schemes can only be described as the Defendants' Business Model for hiring and causing its subcontractors and agents to hire, workers from developing nations to provide BLS to U.S. soldiers under the LOGCAP IV, Task Order 0004.

## PARTIES

A.    **Defendants**

3.        Defendant DynCorp International Inc. (DynCorp, Inc.) is a Delaware corporation with offices in Ft. Worth, Texas and McLean, Virginia.   It provides professional and support services outsourced by the U.S. military, non-military U.S. governmental agencies, and foreign governments.  DynCorp, Inc. is the ultimate parent company of DynCorp International, LLC, DynCorp International, LLC FZE and Worldwide Recruiting & Staffing Services, LLC. DynCorp, Inc. DynCorp, Inc. transacts business in the District of Columbia.  The defendants are collectively referred to in this Compliant as the (Defendants).

4.        Defendant DynCorp International, LLC (DynCorp, LLC) is a Delaware company with headquarters in McLean, Virginia. It functions as the operating company for

DynCorp, Inc. and is the entity that received and performed Contract Number W52PIJ-07-D-0007 from the U.S. Army Sustainment Command, at all times relevant to this Complaint. It transacts business in Texas, Virginia and the District of Columbia.

5.       Defendant DynCorp International, FZ LLC (DynCorp, FZ) is an entity formed in the United Arab Emirates, (Free Zone) Dubai. It is a subsidiary of the ultimate parent, DynCorp International, Inc.. The DynCorp, FZ website describes itself as providing human resources services, including recruitment of workers.

6.       Defendant Worldwide Recruiting and Staffing Services, LLC, (WRSS) is a wholly owned subsidiary of DynCorp, International, Inc. with its principal place of business being Ft. Worth, Texas. The WRSS home office is at the same address as that of DynCorp, Inc., in McLean, Virginia. The WRSS website describes itself as providing recruiting and staffing solutions for the DynCorp International family of companies. WRSS also transacts business in this District.

**B.    Plaintiff/Relator**

7.       Sam W. McCahon is the Relator/Plaintiff (Relator), in this *qui tam action*, representing both himself and the United States. The Relator is a United States citizen has more than thirty years of experience in government contracting, with a focus on government contracting in conflict and post conflict zones. The Relator is also recognized as a subject matter expert in identifying, preventing and mitigating human trafficking on U.S. government contracts.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3730, and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

9.        The Relator, has independent knowledge of the information contained in this Complaint and has voluntarily provided the information to the United States.  He is the original source of the information contained in this Complaint, as defined in 31 U.S.C. §3730(e)(4)(B).   The Relator has served the United States with information including substantially all of the evidence in this matter as required by 31 U.S.C. §3730(b)(2)(B).  To Relator's knowledge there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used  in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148,§ 10104(j)(2), 124 Stat. 119.  Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations in this Complaint are based. Before filing this action, Relator voluntarily disclosed to the Government the information on which the allegations or transactions in this Complaint are based. Additionally, Relator has direct and independent knowledge of the misconduct alleged herein and that knowledge is independent of and materially adds to any publicly disclosed allegations or transactions relevant to his claims.

This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants have minimum contacts with the United States. Moreover, Defendants can be found, transact, or have transacted business in this judicial district. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1395(a), 31 U.S.C. § 3732(a), and 31 U.S.C. § 3730(h)(2) because one or more Defendants can be found in and transact or have transacted business in this judicial district. Any statute of limitations that might otherwise bar any portion of the claims in this Complaint are tolled by virtue of the Defendants' fraudulent concealment and prior denial of their conduct.

## STATEMENT OF FACTS

10.      Defendants engaged in numerous practices in the performance of Task Order 0004 which resulted in defendants' knowingly submitting, or causing to be submitted, multiple false claims against the United States for payments which were made during the course of performing of the Logistics Civil Augmentation Program IV (LOGCAP IV), contract W52PIJ-07-D-0007, Task Order 0004 awarded to DynCorp, LLC on July 7, 2009, (The Contract).

11.      The Contract is an Indefinite Delivery, Indefinite Quantity (IDIQ) contract.

12.      The Contract is governed by its terms and conditions, Laws of the United States, as well as the Federal Acquisition Regulations (FAR), Defense Federal Acquisition Regulations (DFAR) and Army Agency supplements.

13.      Services provided in the Afghanistan under The Contract include: dining and laundry services; billeting; transportation; bus services; sanitation; waste management; water production; transportation; bus services; facilities maintenance; communications services; morale welfare & recreation; vector and pest management services; firefighting services and electrical services, collectively referred to in the Contract as Base Life Support services (BLS).

14.      As a part of the competition for Task Order 0004, each qualifying contractor submitted a proposal to the Department of Army contracting office, identifying how they would propose to perform Task Order 0004 if awarded.  DynCorp, LLC submitted a proposal for Task Order 0004.

15.      On July 7, 2009, The Army Contracting Command, Rock Island (ACC-RI), awarded DynCorp, LLC a Cost-Plus-Award Fee (CPAF) type contract to perform

Task Order 0004 for LOGCAP IV for services in southern Afghanistan.

16.        DynCorp, LLC began performing work under Task Order 0004 in Afghanistan on or about August 1, 2009.

17.        DynCorp, LLC used the home office in Fort Worth, Texas to provide administrative support, including certain billing and compliance functions work under the Contract.

18.        The period of performance under the Contract for awarded to DynCorp, LLC was for one base year and nine option years.

19.        In July of 2013, when exercising option year four under Task Order 0004, the government altered the type of contract. Task Order 0004, for the option year beginning August 1, 2013 was changed to a Cost-Plus-Fixed Fee (CPFF) type of contract.

20.        In total, nine successive option years following the base year were exercised under the Contract for periods of performance through July 1, 2019.

21.        The Contract is currently being performed under an extension of services agreement until the transition is complete for the LOGCAP V contractor to take over performance in Afghanistan.

22.        The most recent extension of services under the contract was for a nine-month period with a performance period starting July 1, 2019.  The estimated total value of the extension of services contract was $188 million dollars.

23.        Including the extension, the total value of Task Order 0004 is 7.2 billion dollars.

24.        Pursuant to FAR 17.207, each time the performance period of the Task Order 0004 was extended through either an exercise of the option years or extension of

services clause, the contracting Officer was required to make an affirmative determination regarding DynCorp, LLC's present responsibility and past performance under the contract, as those terms are defined in FAR 9.103, 9.405 and the Contractor Performance and Review System (CPARS).

25.        Each option year that was exercised under The Contract was initiated under the authority of FAR Clause 52.217-8, incorporated by reference in section I-272 of The Contract.

26.        Once all of the performance periods under the option years expired, the government Contracting Officer (CO) extended the term of the contract under the authority of FAR 52.217-9, Option to Extend the Term of the Contract, incorporated by reference into The Contract at I-273.

27.        The CO has broad authority to bind the government, including awarding contracts, exercising options and modifying the contract terms and conditions.  The CO <u>does not</u> have the authority to settle, pay, adjust or compromise any requests for payment involving fraud.

### DynCorp, LLC Evaluation & Reimbursement

28.        Under the Task Order 0004 CPAF type contract, which applied during the base and first three option years, DynCorp LLC was reimbursed for all of its allowable, allocable and reasonable costs, plus an Award Fee and Base Fee.

29.        The Award Fee is defined in the contract and is a percentage of the allowable, allocable and reasonable costs incurred by DynCorp, LLC.   There are no minimum fee percentages are in the contract for the base or award fee portions.

30.        The Base Fee was an amount fixed at the inception of Task Order 0004.  The Base Fee was paid for DynCorp, LLC achieving minimal performance standards of The Contract requirements.

31.        The Base Fee was not earned, and is therefore paid without contract performance being evaluated.

32.        The Award Fee is earned by DynCorp, LLC based on their performance and compliance with the Contract requirements.  The performance evaluation for the Award Fee was conducted semi-annually.

33.        DynCorp, LLC began each Award Fee evaluation period with 0%.

34.        DynCorp, LLC's  performance in compliance with the Contract was weighted to arrive at the proper percentage, if any, that DynCorp, LLC would receive as an Award Fee for each of the rated periods.

35.        One of the following adjectival ratings were to be used to describe DynCorp, LLC's performance during each evaluated period for purposes of Award Fee determinations:

EXCELLENT  Performance is of the highest quality that could be achieved by a contractor under the contract.  There are *no areas of material deficiencies* (emphasis added) or performance problems encountered during the evaluation period.

VERY GOOD  Performance is of high quality and approaching the best that could be performed by a Contractor.  Work completed greatly exceeds an average performance level.  *A few minor problems* (emphasis added) are experienced during the evaluation period without impacting the overall level of performance.

GOOD  Contractor exceeds some contract requirements in a manner demonstrating commitment to the program.  Work completed is much better than minimum required performance.  Areas of deficiency and *minor problems* (emphasis added) are more than off-set by areas of good performance.

AVERAGE  Contractor performance is minimum required level to meet needs.  Areas of good

performance are off-set by deficiencies and problems, which reduces performance to a level that is ***minimally acceptable under the contract*** (emphasis added).

36.　　　　No Award Fee would have been awarded to DynCorp, LLC if their performance evaluation was Average or Unsatisfactory.

37.　　　　In order for DynCorp, LLC to have receive an evaluation above of GOOD or VERY GOOD, the information regarding the prevalence of TVPRA and AKA violations during the evaluated performance periods under Task Order 0004　would have to be characterized as "a few minor problems". (*emphasis added*)

38.　　　　To receive an EXCELLENT narrative description on the award fee evaluation, the prevalence of violations of TVPRA and AKA would have to be characterized as <u>not</u> constituting "a material deficiency or performance problem".

39.　　　　The Award Fee under The Contract is determined unilaterally by the government based on the contractor's performance as described in  the government's narrative description of the performance: Excellent; Very Good; and Good.

40.　　　　The amount of the Award Fee under the Contract was recommended by the LOGCAP Award Fee Evaluation Board (AFEB).

41.　　　　The AFEB reviewed a number of documents prior to making an Award Fee recommendation to the Award Fee Determining Official (AFDO).

42.　　　　The AFDO made the determination regarding the Award Fee, if any, to be paid to DynCorp, LLC for work performed during the base and option years.

43.　　　　One of the important documents the AFEB considered prior to making its Award Fee recommendation to the AFDO was the Contractor Self-Assessment for each period.

44.　　　　The Program Manager and other DynCorp, LLC management staff participated

in a review board meeting every six months in the performance period. The participants in the review board included the DynCorp, LLC executives and managers, Defense Contract Management Agency Representative (DCMA) who was administering the contract in accordance with FAR 42.302(a), Defense Contract Audit Agency (DCAA) Representative and the Army client representative.

45.        DynCorp, LLC also received annual reviews of their contract performance of Task Order 0004 as reflected in the CPARS as described in FAR 42.1503.

46.        The CPARS is a database used by government wide agencies in evaluating and memorializing a contractor's past performance history. It is used by source selection officials in making determinations for future contract awards.

47.        Past performance is a mandatory evaluation factor for all Department of Defense procurements above the Simplified Acquisition Threshold. The Contract Task Order 0004 exceeded the Simplified Acquisition Threshold during the entire period of performance.

48.        Contractors are required to receive an evaluation based on the criteria defined in FAR 42.1503, including Table 42.1.

49.        Two of the categories of mandatory evaluation under CPARs are Regulatory Compliance and Management of Subcontractors.

50.        Compliance with the prohibitions against Human Trafficking in violation of FAR 22.1700, *et seq.* is specifically referenced in the section's evaluation criteria for Regulatory Compliance.

51.        The FAR requires consistency between the narratives in the Award Fee Evaluations and CPARs evaluations.

52.        Because The Contract provided for an award fee, the performance adjective

rating as described in FAR 16.401 was to be entered into the Federal Awardee Performance and Integrity Information System (FAPIIS) for inclusion in the CPARS database.

53.        DynCorp, LLC's  positive and negative performance was to be entered into CPARS.

54.        Information of violations of the Trafficking Victims Protection Reauthorization Act (TVPRA) as implemented in FAR 22.1704, was required to be included in DynCorp, LLC's CPARS reports.

55.        DynCorp, LLC was aware that any information regarding violations against the prohibitions related to trafficking in persons could adversely affect their CPARS rating.

56.        DynCorp, LLC was aware that an adverse CPARS rating regarding instances of human trafficking on Task Order 0004 for each rated period would adversely affect the Award Fee recommendation of the AFEB and decision of the AFDO to approve payment of the Award Fee.

57.        DynCorp, LLC did not inform the AFEB in its self-assessment of the violations of prohibitions against trafficking in persons, in violation of the TVPRA, that took place during the evaluation periods under Task Order 0004 beginning with the base year, and including option years exercised in 2010, 2011 or 2012.

58.        DynCorp, LLC did not inform the AFEB of the violations of the AKA by either Defendants or ECOLOG that took place during the evaluation periods for the base year or any of the option years exercised in 2010, 2011 or 2012.

59.        DynCorp, LLC had no reference in their FAPIIS or CPAR to violations of FAR 22.1704, Trafficking in Persons, for its period of performance under Task Order 0004.

60.        FAR Clause 52.222-50, Combatting Trafficking in Persons was incorporated

by reference into The Contract at I-65.

61.      FAR Clause 52.222-50 prohibited the use of severe forms of trafficking in persons on government contracts. This clause prohibited, among other things, the use of fraud and coercion to subject a worker to involuntary servitude during the performance of the Contract.

62.      When option year beginning August 1, 2013 was exercised, the type of contract was changed from a CPAF to CPFF for Task Order 0004.

63.      Under the CPFF, DynCorp, LLC was reimbursed for all of its allowable, allocable and reasonable costs, plus a fixed fee.

64.      In order to qualify for the negotiated Fixed Fee portion of the CPFF, DynCorp, LLC was required to meet the agreed standards in the scope of work in the Task Order 0004 of the Contract.

65.      If DynCorp, LLC failed to comply with the minimum requirements of the Contract they would not be entitled to the fixed fee.

66.      The government contracting officer from the Army Contract Command-Rock Island (ACC-RI) had the responsibility for paying the fixed fee at the conclusion of each performance period, in this case, conclusion of the base and each of the option years. The Fixed Fee, like the Award Fee, was paid by unilateral modifications to The Contract.

67.      Ninety percent of the work force providing efforts under Task Order 0004 were Other Country Nationals (OCN) performing BLS work. Compliance with the TVPRA and its implementing regulations were material requirements to the successful completion of Task Order 0004.

68.      Labor provided by the OCN workers was not merely incidental to the fulfillment of the contractual requirements under Task Order 0004, the OCN labor effort was the

core requirement in performance of Base Life Support services (BLS) under Task Order 0004.

69.     Compliance with the AKA was a material requirement of contractor performance necessary to receive the fixed fee under Task Order 0004.

70.     Not using deceptive hiring in the recruiting process was a material expectation of the Contract requirements under Task Order 0004.  Consequently, compliance with the FFLCA was necessary for DynCorp, LLC to receive the fixed fee under Task Order 0004.

### U.S. Government Policy Toward Human Trafficking Government Contracts

71.     FAR Clause 52.222-50(2)(b) describes the zero-tolerance policy regarding trafficking in persons on government contracts.

72.     Congress passed Title XVII, of the NDAA FOR 2013, the Ending Trafficking on Government Contracts Act (ETGCA) on January 2, 2013.  The statute reinforced and elaborated on the existing law regarding the prohibition of using fraud and deception to recruit workers for service on U.S. government contracts.

73.     The ETGA also required the contractor to have a compliance program to combat human  trafficking at all levels in the contractor's supply chain and to certify the compliance with the prohibitions against Trafficking in Persons.

74.     Subsequent to the passage of the ETGA, the government published amendments to the FAR to combat human trafficking on government contracts.

•     One updated regulatory mandate located at FAR 22.1700, *et seq*. became effective March 2, 2015.  The regulation prohibits, among other conduct, contractors, subcontractors and agents from: Using misleading or fraudulent practices during the recruitment of employees when offering employment; Using recruiters that do not comply with local labor laws in the countries in which recruiting takes place; and, Charging employees recruiting fees.

75.        Since 2000 the United States Government has repeatedly expressed a "zero Tolerance Policy" toward the use of human trafficking on U.S. Government Contracts.

76.        The Zero tolerance policy toward Trafficking in Persons prohibits any use of fraud, force or deception to recruit or retain people to work on U.S. Government contracts.

77.        The Zero tolerance policy prohibits any charging workers recruiting fees in exchange for employment positions on government contracts.

78.        The prohibition described in Paragraph 61 have existed in The Contract prior to the passage of the statutory amendments described in Paragraphs 71 & 75 of this Complaint.

79.        The Congress has expressed a zero tolerance toward human trafficking on U.S. Government contracts in an effort to eradicate the practice of using modern day slave labor to perform government contracts.  The ETGCA is an illustration of Congress taking specific measures to combat trafficking in persons on U.S. Government Contracts.

80.        The ETGCA prohibited, among other conduct: Using deceptive hiring or making misrepresentation to workers during the hiring process.

81.        Congress has conducted hearings on the subject of human trafficking on Government contracts, including, but not limited to the hearing before the House Committee on Oversight and Government Reform on November 2, 2011, entitled: Are Government Contractors Exploiting Workers Overseas? Examining Enforcement of the Trafficking Victims Protection Act.

82.        In the National Defense Authorization Act of 2013, Congress passed amendments to the Fraud in Foreign Contracting Act (FFCA) 18 U.S.C. §1351, effective January 2, 2013 in an effort to further protect prospective workers from the use of fraud, force and deception during the recruitment process for foreign workers recruited to work on United

States government contracts performed outside the U.S. The FFCA provides in relevant part:

> (b) "Whoever knowingly and with intent to defraud recruits, solicits, or hires a person outside the United States *or causes another person to recruit, solicit, or hire a person outside the United States* (emphasis added), or attempts to do so, for purposes of employment performed on a United States contract outside the United States..., by means of materially false or fraudulent pretenses, representations or promises regarding that employment, shall be fined under this title or imprisoned for not more than 5 years, or both".

FAR 22.1703 Policy, prohibits contractors, contractors employees, subcontractors, subcontractors employees, and their agents from:

> (5)(i) using misleading or fraudulent practices during the recruitment of employees or offering of employment...;
>
> (5)(ii) using recruiters that do not comply with local labor laws of the country in which the recruiting takes place;
>
> (6) Charging employees recruitment fees;...

83.        The Department of Defense created an organization, the office to Combat Trafficking In Persons (DOD CTIP), with the purpose of organizing a coalition of government workers and military commands in an effort to combat trafficking in persons on U.S. Government Contracts.

84.        The U.S. Government has drafted implementing clauses and provisions to prohibit the use of Labor trafficking on government contracts. FAR 22.1700, *et seq.*, 52.222-50, and DFAR 222.17, all of which were incorporated by reference into the Contract.

85.        On September 27, 2012, then President Obama signed Executive Order 13627

Strengthening Protections Against Trafficking in Persons in Federal Contracts (E.O.).
The E.O. restated the U.S Government's zero tolerance policy against using human trafficking
including the prohibition of charging workers any fees or commissions to obtain a job and using
deceptive hiring practices to recruit workers.

86.        The President of the United States, Congress and the Department of Defense
have taken extensive measures to stop government contractors from using the practice of
deceptive hiring practices, cheating workers concerning compensation, rendering them
involuntary servants and charging money in exchange for favorable treatment (employment) on
U.S. Government contracts.

87.        The EO and ETGCA are referenced as authoritative in the Code of Federal
Regulations reflecting the changes to FAR 22.1701, *et seq*. effective March 2, 2015.

88.        All of the illegal practices of Defendants identified in this Complaint have been
material since the Contract award and remain material expectations of contractor performance,
insofar as that term relates to the Defendants' implied and express certifications of compliance
with the laws, statutes and regulations identified in this Complaint.

### Defendants' Policy vs  Practices Prohibiting Human Trafficking

89.        Defendants have all published and articulated to the US Army and Department
of Defense an adoption of the U.S. Government's "zero tolerance" policy toward human
trafficking on U.S. Government contracts, meaning no trafficking in persons is tolerated.

90.        Defendants' Zero Tolerance Policy toward human trafficking was featured
prominently on their respective websites.

91.        Defendants' Zero Tolerance Policy toward human trafficking on US
Government Contracts was expressed to the U.S. Government through representations contained

in DynCorp, LLC's proposal in an effort to win the Contract, Task Order 0004 and exercise of the option years.

92.          Defendants public statements concerning their corporate policy concerning human trafficking on U.S. Government contracts were designed to create the impression with the U.S. government that Defendants' practices were consistent with their policies of compliance with the government's zero policy toward human trafficking on U.S. Government Contracts.

93.          Defendants never altered their asserted "zero tolerance policy" toward human trafficking, even after discovering the prolific extent of the use of human trafficking of OCN labor during the performance of Task Order 0004.  Human trafficking to supply labor from workers from developing nations was the rule, not the exception in performing Task Order 0004.

94.          The Defendants' published zero-tolerance policy communicated to the U.S. government was a part of the Defendants' effort to conceal the practice of using human trafficking, including fraudulent and deceptive hiring techniques to recruit and retain the labor force to perform BLS under Task Order 0004.

95.          The concealment by Defendants of their "practices" while asserting their respective Zero Tolerance "policies" was an integral part of the conspiracy among Defendants to defraud the U.S. Government, avoid detection and deter government investigation into the prolific practice of violating the TVPRA and using human trafficking to fulfill the OCN labor requirements under Task Order 0004.

96.          The Defendants' false and misleading statements regarding compliance with the U.S. Government zero tolerance policies concerning violations of the prohibitions against trafficking in persons,  were intended to induce the government to exercise the option years under the contract, obtain favorable CPAR ratings, secure Award and Fixed Fees, as well as the

17

Base fees and reimbursement of costs during the entire period of performance of

Task Order 0004.

97.        Had Defendants disclosed their involvement in the prolific violations of

prohibitions against trafficking in persons as described in the TVPRA and implementing

regulations the U.S Government would have rejected DynCorp, LLC vouchers for payment of

OCN recruiting costs, OCN labor costs and resulted in a refusal to exercise the option years

under the Contract, forfeiture of award fees and adverse CPARS evaluations for DynCorp, LLC.

### DynCorp, LLC Employees and Subcontractors

98.        Approximately 97% of the workers performing BLS tasks from the beginning

of contract performance period through December 1, 2019 in Afghanistan under

Task Order 0004 were citizens of developing nations, originating primarily form impoverished

countries in South Asia, Kenya and Kosovo.

99.        The Army and  defendants refer to these workers as Other Country Nationals

(OCNs) or Third Country Nationals (TCN).  This Complaint uses the more contemporary

description contained in the U.S. Government reports and defendants' communications to

reference the workers, OCN.

100.        Approximately ninety percent of the labor effort billed for BLS services since

August 1, 2009 through October 1, 2019 to the U.S. Government under the entire

Task Order 0004 were performed by OCN workers recruited and retained in violation of the

13th Amendment U.S. Const., TVPRA and AKA.

101.        Almost all of the total OCN DynCorp, LLC employee  workforce performing

BSL services from the beginning of contract performance through October 1, 2019, under Task

Order 0004 were recruited and retained in violation of the 13th Amendment to the US. Const., the

TVPRA, AKA, and their respective implementing regulations.

102.    Approximately ninety percent of the total OCN DynCorp, LLC employee workforce recruited and performing BLS services from January 2, 2013 through December 1, 2019, were the recruited and retained in violation of the TVPRA and the FFLCA.

103.    The Contract provided DynCorp, LLC the flexibility of performing the work under Task Order 0004, including the BLS, by either hiring employees or by using subcontractors.

104.    Depending on the timing of contract performance and service provided, DynCorp, LLC would sometimes hire the OCN workers directly as their employees.

105.    When DynCorp, LLC would subcontract the work for BLS the subcontractor would recruit and retain OCNs to perform the labor functions under The Contract.

106.    More than 50,000 OCN workers have provided BLS services under Task Order 0004 during the performance period of The Contract. ECOLOG International, FZE, (ECOLOG) was a company providing base support and logistics services to multiple U.S. companies performing U.S. Government contracts in Afghanistan.

107.    ECOLOG USA, Inc. (ECOLOG USA) is an entity with offices in Texas and Virginia.  They acted as a liaison between ECOLOG and the DynCorp, LLC.  ECOLOG USA is a wholly subsidiary and related entity of ECOLOG.

108.    ECOLOG was the primary subcontractor providing BLS in support of DynCorp's LOGCAP IV, Task Order 0004 requirements.

109.    During the period of performance covered by Task Order 0004, ECOLOG was hiring several thousand OCN workers per year to work in Afghanistan on Task Order 0004.

110.    ECOLOG did not bill the U.S. Government directly for the subcontractor

services required and performed by the OCN labor force.

111.         ECOLOG submitted its vouchers for OCN labor services provided under
Task Order 0004 to DynCorp, LLC each month during the performance period.

112.         The DynCorp, LLC subcontracts management staff in Afghanistan would
review the ECOLOG invoices for accuracy. If there were no apparent discrepancies, the
DynCorp, LLC Afghanistan staff would forward the ECOLOG invoice to the DynCorp, LLC
offices in Ft. Worth, Texas for payment.

113.         The DynCorp, LLC subcontracts manager for the ECOLOG subcontract
account completed a monthly performance survey on ECOLOG, memorializing the performance,
compliance and billing information.

114.         After the DynCorp, LLC billing process described in Paragraphs 112-114 was
completed, DynCorp, LLC sought reimbursement from the U.S. Government for the costs
incurred and billed to DynCorp, LLC by ECOLOG.

115.         ECOLOG knew at the time of the submission of their billing vouchers to
DynCorp, LLC that the costs for services provided by OCN labor providing BLS would be
incorporated into DynCorp, LLC's billing of costs that would be submitted to the U.S.
Government for reimbursement.

116.         ECOLOG knew that the services performed by OCN workers under
Task Order 0004 during the entire performance period were obtained in violation of the TVPRA,
AKA, and for those recruitments taking place after January 2, 2013, in violation of the FFLCA,
and thus fraudulent.

117.         ECOLOG knew that the invoices billed to DynCorp, LLC would be
incorporated into the billings to the U.S. government for reimbursement under Task Order 0004.

118.         DynCorp, LLC paid ECOLOG for the OCN labor services performed and
included the costs of the ECOLOG services in the DynCorp, LLC vouchers submitted to the U.S.
Government for payment of BLS operations under Task Order 0004.

119.         The vouchers were submitted by DynCorp, LLC on a DD Form 250, Receipt of
Services and through the automated portal.

120.         The DD250 submitted by DynCorp, LLC contained a certification that the
supplies and services were provided in compliance with the Contract terms and conditions.

121.         ███████████████████████████████████████████
███████████████████████████████████████ DynCorp, LLC used
affiliated entities to perform the recruiting services. ██████████ and Worldwide Recruiting
Staffing Services, LLC (WRSS) and ██████████ were affiliates of DynCorp, LLC.

122.         During the course of performance under Task Order 0004, WRSS and
██████████ acted as subcontractors and agents for DynCorp, LLC in providing recruiting,
retention and employee processing services ████████████████████████████
███████████████

123.         Acting on behalf of DynCorp, LLC WRSS would enter into the employment
agreements of DynCorp, LLC, with selected OCNs who had been identified recruiters, both
known and unknown.

124.         The employment contracts entered into between the workers and
DynCorp, LLC were entitled Foreign Service Employment Agreement (FSA).

125.         Although the FSA was with DynCorp, LLC, the representatives signing the
FSA on behalf of DynCorp, LLC were employees of WWRS as reflected in the signature block:

> Worldwide Recruiting & Staffing LLC,
> A DynCorp International Company.

21

126.        Most of the workers retained by DynCorp FZ and WRSS to perform BLS services in support of Task Order 0004 were from India. The same fraudulent schemes as described in the Complaint applied to recruitment and retention in Nepal as well.

**Billing Process**

127.        DynCorp, LLC was the only defendant directly billing the U.S. Government under Task Order 0004.

128.        Under the terms of the Contract, DynCorp, LLC, was required to prepare and submit the government form DD 250, Material Inspection and Receiving Report for verification of the services and goods provided and met the quality assurance that the services and supplies as identified in the Contract.

129.        The DD 250 was prepared and submitted to the U.S. government by the DynCorp, LLC authorized representative.

130.        The DD 250 contains certifying language whereby the authorized DynCorp, LLC representative completing the form DD 250 that all of the services provided conform to the Contract.

131.        The certification on the DD250 includes conformity with the Contract terms and conditions during the provisions of the service provided.

132.



133.

134.

135.        Recruiting services are allowable costs under Task Order 0004, provided they meet all standards of allowability, allocability and reasonableness as defined in FAR Part 31.2.

136.        Recruiting services are specifically identified as an allowable cost in The Contract.

137.        Charging any fees to workers in exchange for receiving the favorable action of granting employment to work on Task Order 0004 is prohibited by TVPRA and AKA.

138.        

139.

140.        The systemic hiring schemes used by DynCorp, FZ, WRSS, their subcontractors and agents to recruit and retain the OCN workers for the Contract was performed in violation of the TVPRA and the AKA.

141.        For recruiting that took place after January 2, 2013, the recruiting scheme conducted by WRSS was also in violation of the FFLCA.

142.        

143.

144.

145.        DynCorp, LLC submitted the vouchers to the U.S. government for

reimbursement, including the fraudlent recruiting costs incurred by WRSS, their subcontractor and agents.

146.   

147.

148.

149.   DynCorp, LLC submitted the vouchers to the U.S. government for reimbursement, including the recruiting costs invoiced by ███████ their subcontractor and agents.

150.   DynCorp, LLC submitted their vouchers for payment under Task Order 0004 to the U.S. government monthly.

151.   DynCorp, FZ had knowledge that the recruitment services provided and billed to DynCorp, LLC for the entire duration of the DynCorp, LLC-DynCorp, FZ contractual relationship were provided in violation of the TVPRA and AKA, and consequently, fraudulent.

152.   For those recruiting services provided and billed occurring after January 2, 2013 and continuing through the remainder of the Contract, DynCorp, FZ had knowledge that the recruiting services were also in violation of the FFLCA.

153.   The reimbursement vouchers under Task Order 0004 were submitted by DynCorp, LLC electronically to the government via the Department of Defense Invoicing,

Receipt, Acceptance and Property Transfer (iRAPT) system.

154.     DynCorp, LLC had knowledge that the recruiting services for the entire period of the recruiting and retention of employees through WRSS were fraudulent and violated the laws and regulations referenced in Paragraphs 1-2 of this Complaint.

155.     DynCorp, LLC had knowledge that the recruiting services for the entire period of the recruiting and retention of OCN employees through DynCorp, FZ were in violation of the AKA and TVPRA.

156.     The vouchers for payment of costs incurred by DynCorp, LLC each month during the performance period of the Contract were provisionally paid by the U.S. government, pending an audit to be conducted by the Defense Contract Audit Agency (DCAA).

**FRAUDLENT RECRUITING SCHEMES**

**(DynCorp, FZ, WRSS and DynCorp, LLC)**

157.     During the period of performance from the base year performance period through December 1, 2019, DynCorp, LLC employed thousands of OCN workers to perform BLS under Task Order 0004.

158.     DynCorp, FZ, WRSS and DynCorp, LLC conspired with persons and entities, known and unknown, to use assorted fraudulent schemes to recruit OCN citizens to become DynCorp, LLC employees.  Two consistent variables present in the recruiting schemes were the use of deceptive hiring practices and the charging of money to workers in order to receive employment with DynCorp, LLC under LOGCAP IV, Task Order 0004.

159.     WRSS, their subcontractors and agents, used deceptive hiring, as those terms are defined in TVPRA, to recruit the workers for Task Order 0004.  The conduct was in violation of the TVPRA and for instances occurring after January 2, 2013, in violation of the FFLCA.

160.     The Anti-Kickback Act of 1986, 41 U.S.C. §§51-58, as incorporated in The Contract at FAR 52.203-7, defines a Kickback as used in the clause, as:

> *"**any money, fee, commission**"*, (emphasis added)  credit, gift, gratuity, thing of value, or compensation of any kind which is provided , directly or indirectly, to any prime contractor, prime contractor employee, , subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or with a subcontract relating to a prime contract".

161.     The Anti-Kickback Act of 1986, 41 U.S.C. §§51-58, as incorporated in the Contract at FAR 52.203-7, defines a subcontract as used in the clause as a contract or contractual action entered into by a prime Contractor or subcontractor for the purpose of obtaining supplies, materials, equipment, or services **of any kind (**emphasis added) under a prime contract.

162.     The Anti-Kickback Act of 1986, 41 U.S.C. §§51-58, as incorporated in The Contract at FAR 52.203-7, defines a "*subcontractor* "(emphasis added), as:

> (1) any person other than the prime Contractor, who offers to furnish or furnishes any supplies, materials, equipment, or **"*services of any kind* "** (emphasis added) under a prime contract or a subcontract entered into in connection with such prime contractor, and,
>
> (2) includes any person who offers to furnish or furnishes general supplies to the prime Contractor or a higher tier subcontractor.

163.     The Anti-Kickback Act of 1986, 41 U.S.C. §§51-58, as incorporated in The Contract at FAR 52.203-7, defines a subcontractor employee:"… as used in the clause, means any officer, partner, employee, or "**agent of a subcontractor**". (*emphasis added*)

164.      The Anti-kickback Act of 1986, 41 U.S.C. §§51-58,[1] as incorporated into The Contract at FAR 52.203-7, prohibits any person from-

> (b)(1) Providing or attempting to provide or offering to provide any kickback.
>
> (b)(2) Soliciting, accepting, or attempting to accept any kickback…
>
> The section also provides the mandatory reporting process:
>
> (b)(2)  When the Contractor has "**reasonable grounds**" (*emphasis added*) to believe that a violation described in paragraph (b) of this clause may have occurred, the Contractor shall promptly report in writing the possible violation. Such report shall be made to the Inspector General of the Contracting Agency.

165.      The DynCorp, LLC's subcontractors and agents charging workers money to receive favorable treatment by giving them employment was fraudulent, and in violation of the AKA during the entire period covered by this Complaint.

166.      DynCorp, LLC, DynCorp, FZ and WRSS Program Managers, executives, principals and employees were aware of the illegal kickbacks being paid by OCN workers in order to obtain employment in support of Task Order 0004.  The knowledge of OCN workers paying kickbacks described in this Complaint was common knowledge among the Program Managers, Compliance Officers and other executives in Defendants' respective organizations.

167.      The subcontractors, agents and employees of DynCorp, LLC, DynCorp, FZ and WRSS were soliciting and accepting money from prospective workers in exchange for favorable treatment under the Contract in violation of the AKA.

168.      DynCorp, LLC, DynCorp, FZ and WRSS are vicariously liable for violations of the AKA by their employees, agents and subcontractors at all levels.

---

[1] The language cited is from the clause incorporated into The Contract, dated July 1995.  The citation, but not the language, for the statute was since changed and is currently located at 41 U.S.C.§ 87.

169.        DynCorp, FZE and WRSS could have placed adds in the Indian newspapers to recruit the workers directly.

170.        DynCorp, FZ and WRSS did not place job vacancy announcements in the newspapers. Instead, they entered into contracts with local agents and recruiters to act as subcontractors to perform the recruitment tasks for OCN labor under Task Order 0004.

171.        The use of recruiters in India was a part of the conspiracy to defraud the U.S. government and to conceal the existence of violations of the AKA, FFLCA and TVPRA committed by DynCorp, FZ, WRSS, their agents and subcontractors, performing recruiting services.

172.        The Indian recruiters, their agents and employees who solicited and received kickbacks from prospective DynCorp, LLC employees acted as agents and subcontractors for WRSS, DynCorp, FZ and DynCorp, LLC.

173.        Indian law states that only recruiting companies approved by the Ministry of External Affairs can engage in the recruitment of workers to be sent on employment outside of India.

DynCorp, FZ Recruiting Scheme

174.        DynCorp, FZE posted job vacancies on their website, but did not respond to the online submissions of applications for employment on Task Order 0004 from job applicants.

175.        The publishing of positions announcements on their website was a part of the scheme and conspiracy used to deceive the U.S. government as a customer into thinking workers were recruited in compliance with the laws and regulations in compliance with the TVPRA and FFLCA as described in this Complaint.

176.        DynCorp, FZE coordinated with subcontractors and agents, as those terms are

defined in the AKA, known and unknown, in order to recruit workers for employment on Task Order 0004 of the Contract.

177.     The DynCorp, FZE agents in India used social media to notify prospective workers of job opportunities available for DynCorp, LLC under Task Order 0004 in Afghanistan.

178.     The agents DynCorp, FZE used in their recruiting scheme were not licensed in India to recruit for labor jobs outside of India, and therefore, they were not able to allowed to publish job listings for DynCorp, LLC in the local newspapers.

179.     Using the DynCorp, FZ scheme, prospective workers in India who responded to the DynCorp, LLC position description announcements distributed by social media were instructed by the DynCorp, FZE India based agents to provide their resume, certificates of completion for training and education and then meet the agent at the designated location. Prospective workers were also instructed to forward copies of their passports and bring the original passports at a time and place to be determined.

180.     Once the prospective workers were approved each worker would be required to pay the DynCorp, FZ India based recruiting agent the Indian Rupee equivalent of several thousand dollars in cash to receive employment with DynCorp, LLC.

181.     The DynCorp, FZ India based agent would then arrange transportation to Dubai to meet with the DynCorp, FZ representative to receive the written contract for work in Afghanistan on Task Order 0004.

182.     At the time of the period covered by the Complaint, the average one-way air ticket from India to Dubai was approximately $175.

183.     Indian Travel Services, (Overseas Manpower Consultancy) with offices in Chennai, India was one of the many agents used by DynCorp, FZ to provide illegal and

fraudulent recruiting services and receive kickbacks from OCN prospective employees to work on Task Order 0004.

184.        By way of example, on July 12, 2017, the Relator provided credible information and evidence via written notice to the DynCorp, LLC compliance office regarding this particular agent performing illegal recruiting services on behalf of DynCorp, FZ in violation of the TVPRA, AKA and FFLCA to work on Task Order 0004.

WRSS Recruiting Scheme

185.        Mathew & Associates, Pvt. Ltd. was the preferred, but not the only, subcontractor and agent used by WRSS to recruit workers for performance on Task Order 0004.

186.        Mathew & Associates is incorporated in India with offices in Delhi, Kochi and Chennai, India.

187.        Mathew & Associates served as a second-tier subcontractor to DynCorp, LLC.

188.        While the conduct described in Paragraphs 190-203 is identifying Mathew & Associates, it illustrative of the business model used by all of WRSS' India based subcontractors and agents who performed recruiting services on behalf of WRSS for work on Task Order 0004.

189.        When the prospective worker in India would respond to a newspaper advertisement for employment with DynCorp, LLC Mathew & Associates would not schedule the applicant for an interview.

190.        Instead of granting an interview, the WRSS recruiting subcontractors and agents working on behalf of WRSS and as second tier subcontractors to DynCorp, LLC including Mathew and Associates, would provide the prospective worker with phone numbers of people who were authorized to act as subagents for the recruiting company.

191.        The recruiters, working as agents and subcontractors for WRSS would require

workers to go through the subagent in order to apply for a position with DynCorp, LLC.

192.        The function of the subagents was to screen the prospective worker to determine if he was capable and willing to pay the required kickback in order to obtain employment with DynCorp, LLC under Task Order 0004 of the Contract.

193.        ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

194.        The subagent would tell the prospective worker how much money he would have to pay to get the job.

195.        After agreeing to pay the amount of the kickback to the agent and providing Assurances he had the capacity to pay the kickback, the prospective worker would be referred back to the Defendants' recruiting agent.

196.        The amount of the kickback varied depending on the sub-agent, but the amount of kickback generally ranged from between $2,000 and $5,000 equivalent in Indian rupees to be paid by each OCN worker to receive employment through WRSS with DynCorp, LLC under Task Order 0004.

197.        Once the amount of the kickback was agreed to between the prospective DynCorp, LLC employee and the subagent, the applicant could then be interviewed by the Indian recruiter retained by WRSS.

198.        Before the job would be formally offered by DynCorp, LLC through WRSS to the prospective DynCorp, LLC employee , the applicant would be required to pay the kickback to the subagent.

199.     On information and belief, the subagent would provide a portion of the kickback paid by the prospective worker to the recruiting agent retained by WRSS on behalf of DynCorp, LLC.

200.     After the prospective DynCorp, LLC employee paid the kickback, the subagent would notify the recruiter that the applicant could be referred to WRSS for an employment contract.

201.     Most of the time, the worker would need to obtain a loan from the local money lender in order to pay the required kickback.  The typical average interest rate on the loans ranged between thirty to forty percent.

202.     The prospective worker often times would use the family ancestral home as collateral for the loan to pay the mandatory kickback to the subagent.

203.     The money was paid by the OCN prospective workers to the subagent in order to receive an employment offer from DynCorp, LLC.

204.     If the prospective worker was unwilling or unable to pay the kickback solicited by the agents and subagents, he would not be given employment by DynCorp, LLC on Task Order 0004.

205.     DynCorp, LLC, DynCorp, FZE, and WRSS are vicariously liable for the kickbacks solicited by their agents and subcontractors in violation of the AKA.

206.     DynCorp, LLC, DynCorp, FZE, and WRSS are vicariously liable for the kickbacks paid by every subagent to the Defendants' recruiters in India.

207.     When the workers received a contract entered into by WRSS on behalf of DynCorp, LLC, the agreement would specify the job title, compensation and country in which the contract would be performed.  The employment contracts were provided to the workers prior

32

to departing India at the WRSS employee processing center in Delhi, India.

208.        The Defendants used DynCorp, FZ in Dubai as an additional processing point after the workers would leave India and prior to deployment to Afghanistan for work on Task Order 0004.

209.        The DynCorp, FZE website identifies the company as performing recruiting functions.

210.        While in Dubai under the direction of DynCorp, FZ, an employee of WRSS would inform the workers that the job for which they were originally retained and entered into a contract for was no longer available.

211.        The modified employment agreement offered while the OCN worker was in transit through Dubai and under the control of DynCorp, FZ and WRSS would be just over half the amount of compensation promised in the original contract. The job titles were also changed to that of a General Laborer.

212.        One of the WRSS employees, but not the only one, implementing this aspect of the deceptive retention was Trisha N. Clark. Because this was a business model used by WRSS, multiple employees were engaged in this aspect of the deceptive hiring during the course of the period of performance covered by this Complaint. Trisha N. Clark is used as a representative illustration of those who knowingly used the deceptive hiring by altering the workers' job title and compensation.

213.        The WRSS employee, Trisha N. Clark would inform the worker that they could either accept the position of General Laborer at a reduction in pay of approximately forty-five percent, or they would be sent home.

214.        Because the worker had already paid the mandatory kickback to the WRSS's

subcontractor ranging from between one and three years of his annual India salary, he would accept the modified DynCorp, LLC offer rather than loose the kickback paid to the agents of WRSS. The OCN worker would begrudgingly reason that "something was better than nothing".

215.        DynCorp, LLC also had a role in the deceptive hiring process described in Paragraphs 2011-215 of the Complaint. The switching of the OCN worker job titles and compensation was approved by the DynCorp, LLC, Director of Human Resources as evidenced by their signatures appearing on the Foreign Service Employment Agreement Modification, DynCorp International, LLC.

216.        The conduct described in Paragraphs 2010-217 constitutes deceptive hiring and severe trafficking in persons violations as described by the TVPRA, and for those instances occurring after January 3, 2013, they constitute violations of the FFLCA.

217.        The workers would be compelled to work for DynCorp, LLC at the reduced rate of compensation for approximately eighteen months just to earn enough money to repay the loan amount and interest taken out to pay the mandatory illegal kickback.

218.        If the worker failed to repay the loan taken to pay the kickback, he would lose the loan collateral, often times the ancestral home where is family was then presently residing.

219.        The fraudulent and deceptive hiring business model used by DynCorp, FZ and WRSS subcontractors and agents as described in this Complaint created what the U.S. Government defines as "involuntary servitude" .

220.        The use of involuntary servitude in the recruitment and retention process on U.S. government contracts constitutes violations of the prohibitions against trafficking in persons contained in the TVPRA, implementing regulations and the clause.

221.        Involuntary servitude and trafficking in persons are in violation of the U.S.

government Zero Tolerance policy against trafficking in persons.

222.        Involuntary servitude is in violation of the 13th Amendment to the U.S.
Constitution.

223.        Because of the relatively large debt incurred to pay the kickback and obtain the
employment with DynCorp, LLC, coupled with the high interest rates paid to the local money
lenders, the OCN DynCorp, LLC employees would remain in an involuntary servitude status for
as long as 18 months to two years after beginning their work for DynCorp, LLC under
Task Order 0004 in Afghanistan.

224.        The OCN workers were threatened by the subcontractors and agents of
DynCorp, FZE and WRSS that if they informed anyone from the U.S government about the
money they paid  to obtain the DynCorp,  LLC job, they would be terminated and returned home
immediately.

225.        If the worker was sent home and no longer had an income, he would forfeit the
family home used as collateral, rendering his family homeless.

226.        The DynCorp, LLC, subcontractors and agents instructed the workers to
fraudulently conceal from the U.S. government the fact that they paid a kickback to obtain the
employment.

227.        The fraudulent concealment initiated by the subcontractors was taken in
furtherance of the conspiracy between the Defendants, their agents and subcontractors,
individuals and entities, both known and unknown in order to facilitate the fraudulent billings to
the U.S. Government for OCN workers performing BLS under Task Order 0004.

228.        The purpose of the conspiracy was to conceal the illegal conduct and avoid
detection of the fraudulent recruiting scheme and charging workers money in exchange for a job

35

performing on Task Order 0004.

ECOLOG Fraudulent Recruiting Scheme

229.     ECOLOG, a Dubai based company, intentionally created an extended supply chain for OCN labor to perform work on The Contract, Task Order 0004.

230.     The DynCorp, LLC subcontractor ECOLOG would post available positions for work on LOGCAP IV, Task Order 0004 on their website.

231.     ECOLOG would not respond to OCN prospective worker inquiries for BLS work under Task Order 0004 posted on their website.

232.     The publishing of position announcements on their website was a part of the scheme and conspiracy used to deceive the U.S. government as a customer into thinking workers were recruited in compliance with the TVPRA, AKA and FFLCA.

233.     ECOLOG communicated to government officials both in writing and verbally, a "Zero Tolerance Policy" toward human trafficking on government contracts.  This publication of the "policy" was a part of the scheme to deceive the U.S. government into believing the company wasn't engaged in human trafficking on U.S. Government contracts.

234.     ECOLOG conspired with recruiting entities and individuals in Dubai, to develop and execute fraudulent recruiting processes to provide for its labor needs under Task Order 0004.

235.     The agent for ECOLOG in Dubai would in turn conspire to defraud the U.S. government with agents in the country where the workers lived, India.

236.     The agents in India would offer prospective workers employment with DynCorp, LLC, knowing that the positions to be hired were for ECOLOG, not as employees of DynCorp, LLC.

36

237.    The fraudulent recruiting cycle would include the workers providing their passports, resumes and any training certificates to the recruiter's agent and later meeting the agent at the airport or other location at an appointed date and time.

238.    The OCN workers would agree to pay ECOLOG's Indian agent a mandatory kickback in exchange for receiving a job with DynCorp, LLC.

239.    The money paid by the prospective worker to the India based agent for ECLOG would typically range between $2,500-$6,000 equivalent in Indian rupees.

240.    The amount of the kickback solicited and required by the recruiters through their agents and paid by the workers was equivalent to several years of the OCN worker's salary in India.

241.    The payment of the kickback by the workers to the DynCorp, LLC's subcontractors and recruiters was in India was in violation of Indian law.

242.    The payment of the kickback by the OCN workers to the India based recruiter was an illegal kickback as defined by the AKA.

243.    The OCN workers who paid the kickbacks were threatened by the DynCorp, LLC subcontractors that if they informed anyone from the U.S. Government that they paid money to get the job, they would be immediately terminated and sent back to India.

244.    The threat of employment termination of the OCN worker for disclosing the illegal conduct of the DynCorp, LLC subcontractors, and agents in soliciting a kickback was an effort to conceal the conduct from the U.S. government, and thereby, avoid the adverse consequences associated with violating the TVPRA, AKA and the FFLCA.

245.    When the worker and subcontractor would meet at the airport or other location in the country of recruitment, the agent would collect the kickback in cash.

246.     Instead of receiving a work VISA, the worker's passport would merely contain a Tourist VISA, with a validity period ranging from 30 to 90 days.

247.     By providing a Visit VISA as opposed to a Work VISA to Dubai, ECOLOG intentionally put a time constraint on the workers to induce him to accept any contract for a reduced amount for compensation, and employment with ECOLOG, not DynCorp, LLC.

248.     If the workers didn't obtain employment within the time limitations of the Visitor VISA, they would be compelled to either return to their home country or be in violation of UAE immigration law and consequently, face a fine and imprisonment.

249.     The scheme of using the legal process to intimidate workers is in violation the TVPRA and for those instances occurring after January 2, 2013, the FFLCA.

250.     On information and belief, the agent in India forwarded a portion of the kickback paid by the OCN workers in India to the recruiter in Dubai.

251.     A small portion of the OCN workers' kickbacks would also be used to pay the workers' airfare from India to Dubai.

252.     When the worker would arrive in Dubai he would be met by an agent of the ECOLOG subcontractor/recruiter and taken to a man-camp for billeting, usually a place called Sonopur.  Sonapur is Hindi for "city of gold".

253.     Often times the recruiting agent of ECOLOG in Dubai would charge the OCN worker an additional cash kickback to secure a job with ECOLOG under Task Order 0004.

254.     While in the man-camp the worker would be informed by the Dubai subcontractor agent that the job as a DynCorp, LLC employee was no longer available, but they might be able to get a position with the DynCorp, LLC subcontractor, ECOLOG.

38

255.     An employee or agent of ECOLOG would then meet with the employee, knowing that the job applicant was recruited and provided only a Visit VISA, and ECOLOG would make a job offer.

256.     The amount offered by ECOLOG was typically be fifty percent of what they were promised as an inducement by the ECOLOG recruiting agent in the India.

257.     ECOLOG was confident the OCN worker would accept the reduced salary because ECOLOG was aware of the prior kickbacks paid by the OCN worker and of his need to secure employment to repay the debt attributed to payment of the kickback.

258.     ECOLOG was confident the OCN worker would accept the reduced salary offer because if he remained in Dubai beyond the expiration of his VISIT Visa, he would be prosecuted, imprisoned, fined then deported.

259.     Threat of legal action against a worker to induce acceptance is in violation of the TVPRA.

260.     Because the worker had already paid the cash kickback in India, he accepted the reduced salary offer from ECOLOG, reasoning that "something is better than nothing".

261.     Occasionally, the OCN worker would be required to pay an additional kickback to the Dubai based recruiter who arranged the interview with ECOLOG.

262.     If the worker didn't accept the ECOLOG employment with reduced salary, he would be sent home, unable to repay the loan taken to pay the kickback and lose the loan collateral, typically the family home where his family was currently residing.

263.     The recruiting process used by ECOLOG as described in this Complaint constitutes what the U.S. Government has defined as "involuntary servitude" in violation of the prohibitions against trafficking in persons contained in the TVPRA and the 13th Amendment to

the U.S. Constitution.

264.         The ECOLOG conduct is also in violation of the FFLCA for conduct occurring after January 2, 2013.

265.         The Dubai recruiting agent would also pay a cash kickback to ECOLOG of several hundred dollars for each worker ECOLOG would accept.

266.         DynCorp, LLC is vicariously liable for the cash kickbacks paid by the Dubai based recruiting firms and individuals to ECOLOG, their agents and employees.

267.         DynCorp, LLC is vicariously liable for the illegal kickbacks paid by the OCN workers to the Dubai based recruiters.

268.         The contract between DynCorp, LLC and ECOLOG was a firm-fixed price contract.

269.         Consequently, the money ECOLOG saved from: not paying the workers' airfare from the home country to Dubai, not paying a recruitment fee, VISA costs and paying fifty percent of labor contract costs had it not used the deceptive hiring scheme described in this Complaint, resulted in more than 100 million dollars in additional profit for ECOLG over the course of the performance period covered by this Complaint.

270.         Because the contract between ECOLOG and DynCorp, LLC was a firm fixed price type contract, the money ECOLOG saved from the fraudulent recruiting scheme and kickbacks did not reduce the amount the U.S. Government eventually paid for the services provided by ECOLOG under Task Order 0004.

271.         The fraudulent conduct described in Paragraph 270-272 merely served to increase ECOLOG's profits and render the worker more subservient during their employment.

272.         The Dubai recruiters conspired with ECOLOG to provide ECOLOG with

fraudulent invoices in an effort to create the false impression to the U.S. government that ECOLOG paid a recruiting fee to the Dubai recruiter for each worker.  This was an additional act in furtherance of the conspiracy of the Defendants, ECOLOG, their subcontractors and agents to defraud the U.S. Government.

273.      One objective of the conspiracy between ECOLOG, DynCorp, LLC and the recruiting agents and subcontractors described in this Complaint was to conceal the fact that all costs related to the recruitment:  airfare; recruiting fee; and, expenses were taken from the kickback illegally paid by the worker.

274.      The ECOLOG conduct described in Paragraphs 230- 274 constitutes systemic violations of the Department of Defense Zero tolerance policy toward human trafficking on government contracts, the 13th Amendment to the U.S. Constitution, TVPRA and AKA.

275.      For those instances occurring after January 3, 2013, the conduct also constitutes violations of the FFLCA.

276.      The conduct described in Paragraphs 230-274 took place from the date of the DynCorp, LLC retention of ECOLOG through the termination of the subcontract under Task Order 0004.

277.      Ensuring that violations of the AKA do not occur in government contracts is a material expectation of the U.S. government.

278.      DynCorp, LLC was required to flow the AKA clause down to all levels of subcontractors.

279.      In those instances where the AKA clause was not flowed down to all tiers of subcontractors, the lower tier subcontractors are still required to comply with the AKA.

280.      The AKA prohibitions and processes apply to all subcontractors, vendors,

suppliers and agents providing services in support of Task Order 0004.

281.    Defendants' compliance with the AKA and FAR 52.203-7, incorporated into The Contract are a material expectation of the U.S. Government.

282.    Defendants' compliance with the AKA is a material expectation of the U.S. Government for Defendants and all tiers of their subcontractors.

283.    DynCorp, LLC is vicariously liable for the kickbacks paid by the prospective employee to the India based recruiting agent.

284.    DynCorp, LLC is vicariously liable for the kickbacks paid by the Dubai based recruiter to ECOLOG.

285.    DynCorp, LLC is vicariously liable in those instances whereby kickbacks paid by the prospective employee to the Dubai based recruiter.

**DynCorp, LLC Evaluations & Financial Incentives**

286.    Consistent with FAR 42.1502, DynCorp, LLC received an evaluation annually while performing Task Order 0004.  The evaluation is known as the Contractor Performance Assessment Report (CPAR).

287.    CPAR reports are entered into a governmentwide system to chronical a contractor's performance on each contract exceeding the simplified acquisition threshold. Task Order 0004 exceeds the simplified acquisition threshold.

288.    The CPAR regulatory guidance contains a number of categories in which the prime contractor will be evaluated.  Among the categories of conduct that can affect a CPAR evaluation are Management of Subcontractors and Regulatory Compliance with ethical and legal standards, including the TVPRA.

289.    Task Order 0004 was a cost type with Award Fee contract. Consequently, any

42

assessment reflected in CPAR would impact the Award Fee DynCorp would receive under Task Order 0004.

290.     The Award Fee percentage in Task Order 0004 for the base period and first three option years was dependent on performance evaluations as assessed by the AFEB.

291.     The Award Fee percentage was based on the total allowable, allocable and reasonable costs incurred by DynCorp, LLC.

292.     The CPARS report for DynCorp, LLC  had no mention of violations of the TVPRA, FFLCA or violations of the laws and regulations described in this Complaint for any of the years Task Order 0004 was performed.

293.     Because there was no reference in the CPARs to the misconduct regarding TVPRA, AKA or FFLCA during Task Order 0004 performance, there was no reduction in Award Fee based on a CPAR evaluation containing the information related to the mismanagement of ECOLOG, WRSS, DynCorp, FZ or instances of violations of law and regulations.

294.     The primary purpose of CPAR is to assess a contractor's past performance and assist source selection officials in making determinations regarding the contractor's suitability for future awards.

295.     Past performance is a mandatory evaluation factor in all procurements over the Simplified Acquisition Threshold.

296.     The Contract and each of the Task Orders exercised under Task Order 0004 exceeded the Simplified Acquisition Threshold.

297.     Accurate CPARs evaluations reflecting violations of the prohibitions against trafficking in persons prohibitions in violation of the TVPRA, AKA and FFLCA over the Task

Order 0004 performance period would have adversely affected the prospect of DynCorp's future contract awards, including the contracting officer's affirmative decision to exercise each of the option years under Task Order 0004.

298.    An accurate CPAR evaluation reflecting prolific practices of violations of the prohibitions against protections against trafficking in persons in violation of the TVPRA, AKA and FFLCA would have required a consistent evaluation by the Award Fee Evaluation Board Assessment which would have reduced the DynCorp, LLC award fees paid by the U.S. government by several million dollars for the base year and each option year exercised in 2010, 2011 and 2012.

299.    If DynCorp, LLC would have accurately reported the prolific violations of TVPRA and AKA to the government contracting officer, DynCorp LLC would not have been entitled to receive an award fee for performance in any of the option years exercised under Task Order 0004.

300.    DynCorp, LLC conducted internal inquires between 20010 and 2019 to determine the prevalence of violations of the U.S. Government's prohibitions against human trafficking on government contracts on Task Order 0004.

301.    The information DynCorp, LLC received from interviews of more than 2,000 workers, almost every worker interviewed, reported the payment of the kickbacks and fraudulent recruiting schemes in violation of the AKA, TVPRA and for those instances occurring after January 2, 2013, violations of the FFLCA.

302.    During the course of the internal inquiries, DynCorp, LLC was aware that the OCN workforce providing BLS services under Task Order 0004 had been the victims of human trafficking in violation of the EO, TVPRA and FAR 22.1700, *et seq*.

44

303.    During the course of the internal audits, DynCorp, LLC determined and documented that substantial portions of the OCN workforce providing BLS services under Task Order 0004 recruited after January 2, 2013, had been victims forced labor and deceptive hiring practices in violation of the FFLCA.

304.    During the course of the internal audits, DynCorp, LLC determined that most of their OCN workers were required to fraudulently pay money to obtain their jobs in violation of the AKA and TVPRA.

305.    DynCorp, LLC had credible information and evidence that the violations of the TVPRA, AKA and FFLCA were committed by its subcontractors and agents. Several employees served as Program Managers during the operative period of this Complaint. The following are two such individuals with the knowledge of violations of the TVPRA, AKA and FFLCA.

306.    Mo Young served as the DynCorp, LLC executive who was Project Manager for Task Order 0004 from July 2012 through February 2014.

307.    Mo Young's duties included overall responsibility for the performance and administration of fulfilling the DynCorp, LLC requirements under Task Order 0004.

308.    Mo Young's duties included the oversight and responsibility for OCN workers performing BLS work under Task Order 0004.

309.    Mo Young was aware of the fraudulent recruiting schemes in violation of the TVPRA, AKA and FFLCA as described in this Complaint that were used by DynCorps, LLC's subcontractors and agents to recruit and retain workers under Task Order 0004 to perform BLS services.

310.    Mo Young, as Project Manager for DynCorp, LLC Task Order 0004 was aware of the systemic practice of charging OCN workers kickbacks in exchange for employment

to work on Task Order 0004.

311.     The kickbacks referenced in this Complaint were in violation of the AKA.

312.     DynCorp, LLC had an obligation to report the conduct described in this
Complaint relative to TVPRA violations to the Inspector General and the cognizant Contracting
Officer.

313.     David Stallard served as the DynCorp, LLC Task Order 0004 Chief of
Staff/Deputy Project Manager, in Afghanistan served in that capacity from February 2014
through July 2919.

314.     In July 2019 David Stallard was promoted to Project Manager for
Task Order 0004.

315.     David Stallard's duties as Deputy Project Manager/Chief of Staff included,
among other responsibilities, management and oversight of project staff functions of human
resources for the three geographical sites in the area of responsibility for DynCorp, LLC.

316.     David Stallard was aware of the fraudulent recruiting schemes in violation of
the TVPRA and FFLCA as described in this Complaint that were used by DynCorp's
subcontractors and agents to recruit and retain workers under Task Order 0004 to perform BLS
services.

317.     David Stallard, as Chief of Staff and Deputy Project Manager for DynCorp,
LLC Task Order 0004 was aware of the systemic practice of charging OCN workers kickbacks
in exchange for employment to work on Task Order 0004.

318.     All kickbacks referenced in this Complaint were fraudulent and in violation of
the AKA and TVPRA.

319.     DynCorp, LLC had an obligation to report the misconduct described in this

Complaint relative to TVPRA violations, to the Inspector General and the cognizant Contracting Officer.

320.        DynCorp willfully, intentionally and with fraudulent intentions withheld the information from those U.S. Government agents and officers to whom they were obligated to report the information of misconduct identified in its audits, worker interviews and attorneys as described in this Complaint.

**MANDATORY REPORTING**

**321.**        Defendants DynCorp, LLC; DynCorp, FZ, WRSS and DynCorp, Inc. and ECOLOG had an obligation to report violations of the TVPRA, FFLCA and AKA to the Inspector General and Contracting Officer.

   **Failure to Report TVPRA Violations**

322.        During the course of the time covered by this Complaint, the DynCorp, LLC, DynCorp FZ and DynCorp, Inc. received information of trafficking in persons on the Contract in violation of TVPRA related to fraudulent recruiting practices and charging workers' money to obtain employment on numerous occasions and from numerous sources.

323.        Reports and information concerning information regarding violations of the protections against trafficking in persons in violation of the TVPRA originated from multiple sources including multiple OCN workers, attorneys, the media and government employees.

324.        Pursuant to FAR 52.222-50(2)(d) (FEB 2009), DynCorp, LLC, DynCorp FZ, and DynCorp, Inc. were required to notify the government contracting officer immediately of:

> "Any information" (emphasis added) it receives from any source (including host country law enforcement) that alleges a Contractor employee , subcontractor, or

subcontractor employee has engaged in conduct that violates this policy;…

325.        The Defendants failed to make the mandatory reports of the information regarding violations of the trafficking in persons prohibitions to the cognizant contracting officer and the Inspector General.

**Failure to Report Violations Pursuant to Closing the Contractor Fraud Loophole Act.**

326.        Pursuant to the Closing the Contractor Fraud Loophole Act of 2008 (CCFLA), as required by FAR 3.1 and implemented in FAR 52.203-13, with an effective date of December 12, 2008, Defendants were required to report credible evidence regarding the use of fraud in the recruitment of OCN workers to provide services under Task Order 0004 to the Inspector General with a copy to the Government Contracting Officer.

327.        The obligation of Defendants to report credible evidence of violations of the FFLCA applies to the misconduct of their own employees and the actions of subcontractor, vendors and anyone in the supply chain providing a service to support the Prime contract, including recruiters and agents.

328.        The FAR 2.101 defines credible evidence as:

>       "information sufficient to support the reasonable belief that a
>       particular act or omission has occurred".

329.        DynCorp, LLC, DynCorp FZ and DynCorp, Inc. received credible evidence of violations of the FFLCA from multiple sources including attorneys, journalists, television broadcasts and the media and OCN workers providing BLS services under Task Order 0004.

330.        The FFLCA appears at 18 U.S.C. §1351 in the criminal code, and is therefore considered a "covered violation" within the meaning of the mandatory reporting under FAR 52.203-13, and the CCFLA.

331.        Although already a requirement, the FAR council provided additional notice

by publishing rules effective March 2, 2015, which among other things, placed a notice in FAR 52.222-50(d)(1) that violations of the FFLCA were subject to the mandatory reporting requirements.

332.    The evidence received by Defendants involved systemic violations of fraud and deception used in the recruitment of OCN workers to provide BLS services by both Defendants' employees, subcontractors and agents performing services under Task Order 0004.

333.    The credible evidence related to fraudulent recruiting conduct occurring between January 2, 2013 through December 1, 2019 involves multiple violations of the FFLCA and the triggered the mandatory reporting requirements of the CCFLA.

334.    Because the credible evidence relates to a possible violation of fraud in violation of Title 18, the CCFLA of 2008 mandated reporting to the Inspector General with a copy to the Contracting Officer (CO).

335.    DynCorp, LLC, DynCorp FZ , WRSS and Dyncorp, Inc. officers and executives were aware of the conduct but failed to make mandatory reports of the credible evidence regarding violations of the FFLC to the Inspector General and the government CO.

336.    The mandatory reporting of credible evidence under the CCFLA is a material requirement and expectation of the U.S. government. It enables the government to learn of the existence, scope and full nature of the suspected fraud.

337.    DynCorp, LLC knew that fraudulent recruiting in violation of the FFLCA if reported and investigated would have an adverse impact on the CO's exercise of options years from 2013 through and including 2018, CPARS evaluations and risk suspension of DynCorp, LLC from government contracting.  Therefore, Defendants withheld the information and willingly failed to report the prolific violations.

338.        Prior to the changes effective March 2, 2015, Defendants and ECOLOG were required to report "any information" relating to allegations of violations of the prohibitions of the protections against trafficking in persons as described in the TVPRA and implementing regulations.

339.        DynCorp, LLC knew the CPAR evaluations containing information regarding human trafficking, violations could have prevented DynCorp, LLC from receiving future contract awards.

340.        Prior to the FAR Council changes to the TVPAR effective March 2, 2015, the Contracting officer was required to enter "any information" related to violations against the trafficking in persons prohibitions into FAPIIS, and consequently CPARS.

341.        After the FAR Council changes to the TVPRA effective March 2, 2015, specifically FAR 22.1704 (c)(1) the Contracting Officer was required to enter "substantiated allegations" of violations of the prohibitions against conduct in violation of trafficking in persons.

342.        DynCorp, LLC knew that reporting any information regarding violations against the prohibitions against trafficking in persons prior to March 2, 2015 would be entered into CPARs and have adverse consequences for DynCorp, LL as already described in this Complaint.

343.        DynCorp, LLC willfully and fraudulently failed to report information related to TVPRA violations occurring after March 2, 2015.

344.        Had DynCorp, LLC reported the information concerning TVPRA violations to the Inspector General it would have resulted in substantiation of the allegations and consequently, would be entered into CPARS and have adverse effects for their company.

345.        By willfully failing to report violations of the TVPRA and FFLCA to the

Contracting Officer and Inspector General, DynCorp, LLC was able to mitigate the prospects of

any investigation and resulting substantiation of the allegations.  If allegations after

March 2, 2015 TVPRA were not substantiated, they were not required to be entered into FAPIIS.

If the allegation were not entered into FAPIIS, the conduct would be less likely to affect future

contract awards, payment of the base and fixed fees and exercise of the remaining option years

under The Contract.

346.        DynCorp, LLC knew that reporting the violations of the TVPRA and FFLCA

could have had an adverse impact on their ability to have the option periods exercised under

Task Order 0004.

347.        DynCorp, LLC, DynCorp, FZ and DynCorp, Inc. were aware of the adverse

consequences of reporting information involving violations of the TVPRA and inability to

manage their subcontracts could have concerning their Award Fee devaluation or elimination

under the periods evaluated in Task Order 0004.

348.        DynCorp, LLC, DynCorp, FZ and DynCorp, Inc. were aware of the adverse

consequences for making the mandatory reporting of misconduct involving violations of the

protections against trafficking in persons in violation of the TVPRA could have concerning the

exercise of option years under Task Order 0004.

349.        DynCorp, LLC, DynCorp, FZ and DynCorp, Inc. were aware of the adverse

 consequences the reporting of information relative to violations of protections against the

prohibitions against trafficking in person in violation of the TVPRA and inability to properly

manage their subcontracts engaged in violations of the TVPRA and FFLCA conduct would have

concerning their CPARS rating for the base year and option years executed under The Contract.

350.        DynCorp, LLC was aware of the adverse effects of the instances of human trafficking in violation of the TVPRA and lack of adequate subcontract management of ECOLOG, WRSS and DynCorp, FZ would have on their CPARS evaluation and ability to receive future awards, including but not limited to, the LOGCAP V award.

**Failure to Report AKA Violations**

351.        The Anti-Kickback Procedures were incorporated into The Contract by FAR 52.203-7 at I-6.

352.        Defendants were required to report AKA violations when they had "reasonable grounds" to believe a violation had occurred by either Defendants, their subcontractors, suppliers or agents.

353.        The AKA and implementing FAR provision required the Defendants' to report the suspected kickbacks promptly, in writing, to the Inspector General.

354.        Defendants each possessed reasonable grounds to believe violations of the AKA had occurred in connection with the OCN DynCorp, LLC employee recruitment and retention under Task Order 0004.

355.        DynCorp, LLC possessed reasonable grounds to believe systemic violations of the AKA had occurred in connection with the OCN ECOLOG recruitment and retention under Task Order 0004.

356.        Defendants willfully failed to voluntarily report AKA violations to the Inspector General in a timely manner.

357.        The willful refusal of DynCorp, LLC, DynCorp, FZ and DynCorp, Inc.to comply with the mandatory reporting requirements when they had reasonable grounds to believe the violations had occurred was an effort to mitigate their risks of adverse consequences.

358.        The failure of Defendants to report violations when they had reasonable

grounds to believe violations had occurred was an effort conceal the information from the U.S.

Government and prevent a government investigation of the fraudulent conduct in violation of the

TVPRA, FFLCA and AKA as described in this Complaint.

359.        The willful failure to engage in the mandatory reporting of information and

conduct identified in this Complaint by Defendants justifies a tolling of the statute of limitations

of any counts that might otherwise be considered beyond the time to file the charges in this

Complaint.

360.        The false statements and fraudulent concealment made by Defendants to

conceal the illegal conduct described in this Complaint serves to toll the statute of limitations for

any portion of the violations raised in the Complaint that might otherwise be untimely.

**FALSE STATEMENTS**

361.        In order to conceal the full extent of their fraudulent billing and conspiracy, the

Defendants and their subcontractors made multiple false statements to the US government

investigators and contracting staff.  The misstatements and half-truths regarding the nature and

extent of Defendants' knowledge and involvement in the conspiracy to defraud the U.S.

government regarding prolific and systemic violation of the 13th Amendment to the U.S.

Constitution,  the FCA, AKA, FFLCA and TVPRA.

362.        The Special Inspector General for Afghanistan Reconstruction (SIGAR)

initiated an inquiry into multiple allegations of prolific human trafficking on U.S. government

contracts in Afghanistan, including services provided by OCN on Task Order 0004.

363.        The SIGAR investigation included a letter dated September 12, 2014 to

Mr. Steven F. Gaffney, Chairman and Chief Executive Officer, DynCorp International, Inc.

address, 1700 Old Meadow Road, McLean, VA. (The letter).

364.     The letter requested information regarding the fraudulent recruiting of OCN workers and the payment of illegal fees by OCN workers to get their jobs working on Task Order 0004.

365.     The letter referenced information that each of the workers were paying "thousands of dollars in recruiting fees" to recruiters to get their jobs on Task Order 0004.

366.     The letter stated that SIGAR had evidence that "TCN workers usually have to borrow substantial sums of money at high interest rates in their home countries in order to pay these recruitment fees. In some cases, the substantial sums that the TCN workers borrow to pay these fees will take months of work to pay back.  The high levels of indebtedness that often result may make it difficult for these TCNs to leave their jobs."

367.     DynCorp, Inc. and DynCorp, LLC initially refused to respond to the requests for information issued by SIGAR.

368.     When DynCorp International, Inc. finally did respond, they falsely asserted that they were not accountable for allegations of kickbacks in the recruiting cycle that occurred in India.

369.     The Defendants fraudulently and intentionally withheld information from SIGAR relative to their involvement in fraudulent recruitment of employees by DynCorp, FZ and WRSS in India that were conducted in violation of the FCA, AKA, FFLCA, and TVPRA.

370.     The Defendants mislead the SIGAR investigators regarding their knowledge of the number of violations and extent of violations of the FCA, AKA, FFLCA and TVPRA that had been taking place on Task Order 0004.

371.     The Defendants mislead the SIGAR investigators regarding their knowledge of

the number of violations and extent of violations of the FCA, AKA, FFLCA and TVPRA that had been taking place on Task Order 0004 through the hiring and retention of ECOLOG OCN workers performing on Task Order 0004.

372.         DynCorp, LLC executives and representatives stated that they could not be held accountable for conduct by subcontractors and agents that occurred in India.

373.         This was a false statement because the Defendants' had both knowledge of the fraudulent conduct and elected not to stop their subcontractors, agents and employees from engaging in violations of the TVPRA, AKA and for those cases occurring after January 2, 2013, the FFLCA.

374.         The withholding of  information identified in Paragraphs 368-374 was made in furtherance of the conspiracy to violate the FCA by concealing Defendants' mismanagement of subcontractors and multiple violations of the TRPRA, AKA and FFLCA by Defendants.

375.         The failure to report the illegal conduct described by SIGAR in it's letter when Defendants' first learned of the information years prior to the SIGAR letter, and withholding of relevant information from SIGAR was an effort to fraudulently preserve the Defendants' ability to receive the exercise of the remaining option years under Task Order 0004.

376.         The failure of Defendants to report the illegal conduct in this Complaint and that described by SIGAR when Defendants' first learned of the information years prior to the SIGAR letter, and withholding of relevant information from SIGAR was an effort to retain monies already wrongfully paid to DynCorp, LLC for the Award Fees, Base Fees, Fixed Fees and vouchers submitted to the US Government for costs of all OCN labor and OCN recruiting by Defendants.

377.         The failure of Defendants to report the illegal conduct described by SIGAR

when Defendants' first learned of the information years prior to the SIGAR letter, and
withholding of relevant information from SIGAR was an effort to preserve DynCorp, LLC
ratings under CPARS for future awards.

378.     The Defense Contract Management Agency (DCMA) was the organization
initially responsible for administering the Contract, Task Order 0004.

379.     During the course of the administration of the Contract, Task Order 0004,
DCMA acquisition staff conducted multiple investigations in Afghanistan into allegations of
OCN workers being subjected to violations of the TVPRA and AKA.

380.     DynCorp, LLC employees and subcontractors, when questioned, made false
statements to the DCMA staff concerning instances of workers having to pay money for their
jobs or being deceptively hired. The false statements were made by Defendants employees to the
DCMA staff in order to conceal the illegal conduct that had taken place in the recruitment and
retention of the OCN workers.

381.     DynCorp, LLC knowingly made false statements each year, beginning with the
end of the base year of performance and annually following the completion of each option year
through August 1, 2013, when they made misrepresentations to the U.S. Government contracting
officer in their Contractor Self-Assessment statements regarding their performance under Task
Order 0004. DynCorp, LLC staff also withheld information from the AFEB during the annual
meetings to determine Award Fee recommendations they would make to the AFDO.

382.     The DynCorp, LLC Contractor Self-Assessment letters were forwarded to the
AFEB in support of their application for the Award Fees for option years one through and
including option year four. The Contractor Self Assessments intentionally omitted any reference
to the trafficking in persons violations or AKA violations as described in this Complaint.

**Billing Process**

383.        DynCorp, LLC submitted invoices for payments for costs associated with the services to the U.S. government monthly.

384.        DynCorp, LLC would receive invoices from ECOLOG, WRSS and DynCorp, FZ on a monthly basis.

385.        Based on information and belief, the invoices submitted by WRSS to DynCorp, LLC included the money paid by WRSS under contractual obligations to recruiters in India.

386.        The money paid by WRSS was made to the same recruiters who demanded and received illegal kickbacks from OCN workers in order to obtain employment with DynCorp, LLC.

387.        The core requirement of the BLS operations is the provision of labor to accomplish the tasks identified in the Contract, Task Order 0004.

388.        Approximately Ninety-Five percent of the workers providing BLS services on Task Order 0004 were OCN workers.

389.        █████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████

390.        Almost all workers, both DynCorp, LLC employees and ECOLOG employees, providing BLS services under Task Order 0004 had been required to pay an illegal kickback to receive employment working under The Contract during the performance period.  OCN workers interviewed frequently stated that "everyone" had to pay the kickback to get the job with DynCorp, LLC.

391.         The recruitment and retention of the DynCorp, LLC employees was often

times fraudulent and deceptive regarding their position and compensation within the company.

392.         DynCorp, LLC was aware that the OCN employees working for ECOLOG on

Task Order 0004 had been deceptively hired as that process is described in the TVPRA and

FFLCA.

393.         DynCorp, LLC, through its Program Managers and Executives, had knowledge

that almost all OCN employees of ECOLOG had been required to pay an illegal kickback in

order to obtain a job on the Contract performing under Task Order 0004.

394.         ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████

395.         DynCorp, LLC's submission of all vouchers for payment to the U.S.

government for  BLS services from a period beginning with the first voucher for payment until

December 1, 2019 under Task Order 0004 for BLS services were knowingly and fraudulently

submitted to the U.S. government for payment.

396.         The contract is a cost type contract, IDIQ, and consequently, subject to the

allowability standards identified in FAR 3.2 and the Cost Accounting Standards clause 52.230-2,

incorporated into The Contract at section I-93.

397.         Approximately 90% of the costs incurred for the provision of BSL operations

under Task Order 0004 were for the OCN labor, either direct labor costs or the cost of recruiting.

398.         Some of the costs of performing BLS support included supply items such as

tent accommodations, dining facility equipment, etc. and are not considered unallowable costs

within this section of the Complaint.

399.      All of the costs of OCN performance incurred by ECOLOG and billed to the
U.S. government through DynCorp, LLC were in violation of the TVPRA, AKA and FFLCA are
unallowable costs within the meaning of FAR 31.2.

400.      All of the direct costs of OCN labor incurred by DynCorp, LLC direct hiring
of OCN employees through its subcontractors and agents were in violation of the TVPRA, AKA
and FFLCA.  Consequently, the costs are unallowable costs within the meaning of FAR 31.2.

401.      In its proposal, DynCorp, LLC identified its high level of competence and
expertise in managing the Contract in compliance with the cost provisions of FAR Part 31.

402.      DynCorp, LLC, has received and performed hundreds of Cost Type contracts
for the U.S. Government.  DynCorp, LLC was aware that costs incurred in violation of the
TVPRA, AKA and FFLCA are not allowable costs under FAR 31.2.

403.      DynCorp, LLC knowingly and willfully submitted fraudulent vouchers to the
U.S. government under Task Order 0004 for reimbursement of the unallowable BLS labor and
recruiting costs for the base and option years of performance beginning in July 30, 2009 and
continuing through December 1, 2019.

404.      DynCorp, LLC knew that the costs incurred and billed for the use of labor in
violation of the TVPRA, were not allowable, but continued to fraudulently claim the costs and
received compensation under Task Order 0004 for OCN BLS labor efforts and recruiting costs
under the base and all options years, and for the period under the extension of services clause
through December 1, 2019.

405.      DynCorp, LLC knew that the costs incurred and billed under The Contract for
OCN BLS services were violations of the AKA and thus, were not allowable.

406.     DynCorp, LLC received payment from the U.S. government from July 2009 for the fraudulent billing of unallowable costs under Task Order 0004 for BLS services.

407.     DynCorp, LLC knew that the costs incurred and billed from the use of labor in violation of the FFLC, were unallowable, but continued to claim those unallowable costs and received compensation for OCN BLS labor under the options years exercised in 2013, 2014, 2015, 2016, 2017 and 2018 of Task Order 0004.

408.     DynCorp, LLC knowingly mislead the U.S. government contracting personnel regarding their compliance with the Contract terms and conditions by not disclosing the fraudulent manner in which its employees were recruited and retained.

409.     DynCorp, LLC mislead SIGAR investigators regarding the extent and scope of violations of the laws and regulations regarding compliance with the TVPRA, FFLCA, AKA and Joint Contract Command regulations prohibiting human trafficking as defined in JCC Clause 952.222-001.

410.     The misrepresentations and half-truths made by DynCorp, LLC to the U.S. Government contracting staff were made in an effort to induce the U.S. Government to pay DynCorp, LLC's invoices for cost reimbursement vouchers submitted to the US Government under Task Order 0004, between July 30, 2009 thru December 1, 2019.

411.     The misrepresentation and half-truths were made by DynCorp, LLC to the U.S. Government contracting staff in an effort to induce the US government to exercise the options years from 2010-2019.

412.     The misrepresentations and half-truths made by DynCorp, LLC regarding their compliance with the TVPRA and AKA were made in an effort to induce the US government contracting staff to provide a higher narrative rating than DynCorp, LLC was entitled to under

the Award Fee determination process, and hence, a higher award fee for performance years starting with the base year and concluding with the option year ending July 30, 2013.

413.        The misrepresentations and half-truths concerning the Defendants' compliance with the TVPRA and AKA were made by DynCorp, LLC to the U.S. government COs, Contracting Officer's Representatives (COR) and DMCA staff in an effort to secure a higher CPARs rating than DynCorp, LLC was entitled to and thus, enhance their prospects for a favorable responsibility determination for new contract awards, including LOGCAP V and other Army contracts.

414.        The misrepresentations and half-truths concerning the Defendants' compliance with the TVPRA and AKA were made by DynCorp, LLC to the U.S. government in an effort to induce the U.S. government payment of the base fee under the base year and options years exercised in 2010, 2011 and 2012.

415.        The misrepresentations and half-truths concerning the Defendants' compliance with the TVPRA and AKA were made by DynCorp, LLC to the U.S. government in an effort to ensure the U.S. government payment of the Award Fee under the base year and options years exercised in 2010, 2011 and 2012.

416.        The misrepresentations and half-truths concerning the Defendants' compliance with the TVPRA and AKA were made by DynCorp, LLC to the U.S. government in an effort to induce the U.S. government payment of the costs incurred under the base year and options years exercised in 2010, 2011 and 2012.

417.        The misrepresentations and half-truths concerning the Defendants' compliance with the TVPRA and AKA were made by DynCorp, LLC to the U.S. government in an effort to ensure the U.S. government payment of the fixed fee under the option years exercised in 2013,

2014, 2015, 2016, 2017 and 2018.

418.    The misrepresentations and half-truths concerning the Defendants' compliance with the TVPRA and AKA were made by DynCorp, LLC to the U.S. government in an effort to induce the U.S. government payment of the costs incurred under the base year and options years exercised in 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 and 2018.

419.    The misrepresentations and half-truths concerning the Defendants' compliance with the TVPRA and AKA were made by DynCorp, LLC to the U.S. government in an effort to mitigate the prospects of detection and resulting accountability, including suspension or debarment from future U.S. government contracting pursuant to FAR 9.4.

## COUNT ONE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A - B)-Against DynCorp, LLC.

420.    The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

421.    By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1)(A-B).

422.    DynCorp, LLC was not entitled to receive any Award Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of the category of OCN workers providing BLS services under Task Order 0004.

423.    Compliance with the TVPRA is a material requirement under The Contract.

424.    Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as identified in the TVPRA, the government would not have given DynCorp, LLC the award fee for the base year.

425.         Dyncorp, LLC's submission of the Contractor Self-Assessment to the AFEB

for the base year performance constituted a fraudulent claim for compensation knowingly

submitted to the U.S. Government, in violation of 31 U.S.C. §§3729(a)(1)(A-B).

<h3 style="text-align:center">COUNT TWO</h3>

<b>Violations of the False Claims Act<br>31 U.S.C. §3729(a)(1)(A - B)-Against DynCorp, LLC.</b>

426.         The allegations in paragraphs 1-420 are incorporated in this Paragraph by

reference as though they were fully stated herein.

427.         By virtue of the acts and omissions described above , Defendants knowingly

presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

428.         DynCorp, LLC was not entitled to receive any Award Fee paid under

Task Order 0004 due to violations of the TVPRA that took place during the recruiting and

retention of the category of OCN workers providing BLS services under Task Order 0004.

429.         Compliance with the TVPRA is a material requirement under The Contract.

430.         Had the U.S. government been aware of the extent to which Defendants were

engaged in violations against the protections against trafficking in persons as identified in the

TVPRA, the government would not have paid DynCorp, LLC the award fee for the first option

year of The Contract.

431.     Dyncorp, LLC's submission of the Contractor Self-Assessment by     DynCorp, LLC

to the AFEB for performance during the third option year constituted a false material record or

statement in support of a fraudulent claim for compensation knowingly submitted to the U.S.

Government, in violation of 31 U.S.C. §§3729(a)(1)(A-B).

63

## COUNT THREE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A - B)-Against DynCorp, LLC.

432.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

433.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

434.     DynCorp, LLC was not entitled to receive any Award Fee paid under Task Order 0004 due to violations of the TVPRA  that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

435.     Compliance with the TVPRA is a material requirement under The Contract.

436.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have granted DynCorp, LLC the award fee for the second option year of The Contract.

437.     Dyncorp, LLC's submission of the Contractor Self-Assessment by DynCorp, LLC to the AFEB for performance during the third option year constituted a false material record or statement in support of a fraudulent claim for compensation knowingly submitted to the U.S. Government, in violation of 31 U.S.C. §§3729(a)(1)(A-B).

## COUNT FOUR

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A & B)-Against DynCorp, LLC

438.         The allegations in paragraphs 1-422 are incorporated in this Paragraph by reference as though they were fully stated herein.

439.         By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

440.         DynCorp, LLC was not entitled to receive any Award Fee paid under Task Order 0004 due to violations of the TVPRA  that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

441.         Compliance with the TVPRA is a material requirement under The Contract.

442.         Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have granted DynCorp, LLC the award fee for the third option year of The Contract.

443.         Dyncorp, LLC's submission of the Contractor Self-Assessment by DynCorp, LLC to the AFEB for performance during the third option year constituted a false material record or statement in support of a fraudulent claim for compensation knowingly submitted to the U.S. Government, in violation of 31 U.S.C. §§3729(a)(1)(A-B).

## COUNT FIVE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

444.         The allegations in paragraphs 1-420 are incorporated in this Paragraph by

reference as though they were fully stated herein.

445.     By virtue of the acts and omissions described above , Defendants knowingly
presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or
approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

446.     DynCorp, LLC was not entitled to receive any Base Fee paid under Task Order
0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN
workers providing BLS services under Task Order 0004.

447.     Compliance with the TVPRA is a material requirement under The Contract.

448.     Had the U.S. government been aware of the extent to which Defendants were
engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the
government would not have paid DynCorp, LLC the base fee for the second option year.

## COUNT SIX

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

449.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by
reference as though they were fully stated herein.

450.     By virtue of the acts and omissions described above , Defendants knowingly
presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or
approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

451.     DynCorp, LLC was not entitled to receive any Base Fees paid under
Task Order 0004 due to violations of the TVPRA that took place during the recruiting and
retention of OCN workers providing BLS services under Task Order 0004.

452.     Compliance with the TVPRA is a material requirement under The Contract.
Had the U.S. government been aware of the extent to which Defendants were engaged in

violations of the protections against trafficking in persons as noted in the TVPRA, the
government would not have paid DynCorp, LLC the base fee for the second option year.

**COUNT SEVEN**

**Violations of the False Claims Act
31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants**

453.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by
reference as though they were fully stated herein.

454.     By virtue of the acts and omissions described above , Defendants knowingly
presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or
approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

455.     DynCorp, LLC was not entitled to receive any Base Fee paid under Task Order
0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN
workers providing BLS services under Task Order 0004.

456.     Compliance with the TVPRA is a material requirement under The Contract.

457.     Had the U.S. government been aware of the extent to which Defendants were
engaged in violations against the protections against trafficking in persons as noted in the
TVPRA, the government would not have granted DynCorp, LLC the base fee for the third option
year of The Contract.

**COUNT EIGHT**

**Violations of the False Claims Act
31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants**

458.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by
reference as though they were fully stated herein.

459.     By virtue of the acts and omissions described above , Defendants knowingly

presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1)(A).

460.     DynCorp, LLC was not entitled to receive any Base Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

461.     Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the government would not have paid DynCorp, LLC the base fee for the fourth option year.

## COUNT NINE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

462.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

463.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

464.     DynCorp, LLC was not entitled to receive any Base Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

465.     Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the government would not have paid DynCorp, LLC the base fee for the fifth option year.

## COUNT TEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

466.        The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

467.        By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

468.        DynCorp, LLC was not entitled to receive any Base Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

469.        Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the government would not have paid DynCorp, LLC the base fee for the sixth option year of The Contract.

## COUNT ELEVEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

470.        The allegations in paragraphs 1-422 are incorporated in this Paragraph by reference as though they were fully stated herein.

471.        By virtue of the acts and omissions described above , Defendants knowingly

presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

472.     DynCorp, LLC was not entitled to receive any Base Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

473.     Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the government would not have paid DynCorp, LLC the base fee for the seventh option year of The Contract.

## COUNT TWELVE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

474.     The allegations in paragraphs 1-422 are incorporated in this Paragraph by reference as though they were fully stated herein.

475.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

476.     DynCorp, LLC was not entitled to receive any Base Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

477.     Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the

government would not have paid DynCorp, LLC the base fee for the eighth option year of The Contract.

## COUNT THIRTEEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

478.      The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

479.      By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

480.      DynCorp, LLC was not entitled to receive any Base Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

481.      Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the government would not have paid DynCorp, LLC the base fee for the ninth option year.

## COUNT FOURTEEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

482.      The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

483.      By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

71

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

484.    DynCorp, LLC was not entitled to receive any Fixed Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

485.    Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the government would not have paid DynCorp, LLC the Fixed Fee for the fourth option year of the Contract.

## COUNT FIFTEEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

486.    The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

487.    By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

488.    DynCorp, LLC was not entitled to receive any Fixed Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

489.    Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the government would not have paid DynCorp, LLC the Fixed Fee for the fifth option year Contract.

## COUNT SIXTEEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

490.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

491.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

492.     DynCorp, LLC was not entitled to receive any Fixed Fee paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

493.     Compliance with the TVPRA is a material requirement under The Contract. Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the protections against trafficking in persons as noted in the TVPRA, the government would not have paid DynCorp, LLC the base fee for the sixth option year of The Contract.

## COUNT SEVENTEEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

494.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

495.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

496.    DynCorp, LLC was not entitled to receive any Fixed Fee paid under Task

Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of

OCN workers providing BLS services under Task Order 0004.

497.    Compliance with the TVPRA is a material requirement under The Contract.

Had the U.S. government been aware of the extent to which Defendants were engaged in

violations of the protections against trafficking in persons as noted in the TVPRA, the

government would not have paid DynCorp, LLC the base fee for the seventh option year of The

Contract.

## COUNT EIGHTEEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

498.    The allegations in paragraphs 1-420 are incorporated in this Paragraph by

reference as though they were fully stated herein.

499.    By virtue of the acts and omissions described above , Defendants knowingly

presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

500.    DynCorp, LLC was not entitled to receive any Fixed Fee paid under

Task Order 0004 due to violations of the TVPRA that took place during the recruiting and

retention of OCN workers providing BLS services under Task Order 0004.

501.    Compliance with the TVPRA is a material requirement under The Contract.

Had the U.S. government been aware of the extent to which Defendants were engaged in

violations of the protections against trafficking in persons as noted in the TVPRA, the

government would not have paid DynCorp, LLC the base fee for the eighth option year Contract.

## COUNT NINTEEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

502.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

503.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

504.     DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

505.     Compliance with the TVPRA is a material requirement under The Contract.

506.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs incurred in providing BLS for the base year of The Contract.

## COUNT TWENTY

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

507.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

508.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

509.      DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

510.      Compliance with the TVPRA is a material requirement under The Contract.

511.      Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs incurred in providing BLS for the first option year of The Contract.

## COUNT TWENTY-ONE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

512.      The allegations in paragraphs 1-420are incorporated in this Paragraph by reference as though they were fully stated herein.

513.      By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

514.      DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

515.      Compliance with the TVPRA was a material requirement under The Contract.

516.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs incurred in providing BLS for the second option year of The Contract.

## COUNT TWENTY-TWO

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

517.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

518.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

519.     DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

520.     Compliance with the TVPRA is a material requirement under The Contract.

521.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs incurred in providing BLS for the third option year of The Contract.

## COUNT TWENTY-THREE

**Violations of the False Claims Act**
**31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants**

522.        The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

523.        By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

524.        DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

525.        Compliance with the TVPRA is a material requirement under The Contract.

526.        Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs incurred in providing BLS for the fourth option year of The Contract.

## COUNT TWENTY-FOUR

**Violations of the False Claims Act**
**31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants**

527.        The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

528.        By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

529.     DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

530.     Compliance with the TVPRA is a material requirement under The Contract.

531.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs incurred in providing BLS for the fifth option year of The Contract.

### COUNT TWENTY-FIVE

#### Violations of the False Claims Act
#### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

532.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

533.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

534.     DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

535.     Compliance with the TVPRA is a material requirement under The Contract.

536.     Had the U.S. government been aware of the extent to which Defendants were

engaged in violations against the protections against trafficking in persons as noted in the
TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs
incurred in providing BLS for the sixth option year of The Contract.

### COUNT TWENTY-SIX

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

537.      The allegations in paragraphs 1-420 are incorporated in this Paragraph by
reference as though they were fully stated herein.

538.      By virtue of the acts and omissions described above , Defendants knowingly
presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or
approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

539.      DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or
recruiting services provided under the BLS operations and paid under Task Order 0004 due to
violations of the TVPRA that took place during the recruiting and retention of OCN workers
providing BLS services under Task Order 0004.

540.      Compliance with the TVPRA is a material requirement under The Contract.

541.      Had the U.S. government been aware of the extent to which Defendants were
engaged in violations against the protections against trafficking in persons as noted in the
TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs
incurred in providing BLS for the seventh option year of The Contract.

### COUNT TWENTY-SEVEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

542.      The allegations in paragraphs 1-420 are incorporated in this Paragraph by

reference as though they were fully stated herein.

543.    By virtue of the acts and omissions described above , Defendants knowingly

presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

544.    DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or

recruiting services provided under the BLS operations and paid under Task Order 0004 due to

violations of the TVPRA that took place during the recruiting and retention of OCN workers

providing BLS services under Task Order 0004.

545.    Compliance with the TVPRA is a material requirement under The Contract.

546.    Had the U.S. government been aware of the extent to which Defendants were

engaged in violations against the protections against trafficking in persons as noted in the

TVPRA, the government would not have reimbursed DynCorp, LLC for OCN labor costs

incurred in providing BLS for the seventh option year of The Contract.

### COUNT TWENTY-EIGHT

**Violations of the False Claims Act**
**31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants**

547.    The allegations in paragraphs 1-420 are incorporated in this Paragraph by

reference as though they were fully stated herein.

548.    By virtue of the acts and omissions described above , Defendants knowingly

presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

549.    DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or

recruiting services provided under the BLS operations and paid under Task Order 0004 due to

violations of the TVPRA that took place during the recruiting and retention of OCN workers

providing BLS services under Task Order 0004.

550.      Compliance with the TVPRA is a material requirement under The Contract.

551.      Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have exercised the option year one with DynCorp, LLC or paid the costs attributed t0 DynCorp, LLC's performance under the first option year.

### COUNT TWENTY-NINE

**Violations of the False Claims Act
31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants**

552.      The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

553.      By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

554.      DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

555.      Compliance with the TVPRA is a material requirement under The Contract.

556.      Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have exercised the option year one with DynCorp, LLC or paid the costs attributed to DynCorp, LLC's performance under the second option year.

## COUNT THIRTY

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

557.         The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

558.         By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

559.         DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

560.         Compliance with the TVPRA is a material requirement under The Contract.

561.         Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have exercised the option year one with DynCorp, LLC or paid the costs attributed to DynCorp, LLC's performance under the third option year.

### COUNT THIRTY-ONE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

562.         The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

563.         By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

564.     DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

565.     Compliance with the TVPRA is a material requirement under The Contract.

566.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have exercised the option year one with DynCorp, LLC or paid the costs attributed to DynCorp, LLC 's performance under the fourth option year.

### COUNT THIRTY-TWO

**Violations of the False Claims Act**
**31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants**

567.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

568.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

569.     DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

570.     Compliance with the TVPRA is a material requirement under The Contract.

571.     Had the U.S. government been aware of the extent to which Defendants were

engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have exercised the option year one with DynCorp, LLC or paid the costs attributed to DynCorp, LLC's performance under the fifth option year.

## COUNT THIRTY-THREE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

572.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

573.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

574.     DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

575.     Compliance with the TVPRA is a material requirement under The Contract.

576.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have exercised the option year one with DynCorp, LLC or paid the costs attributed to DynCorp, LLC's performance under the sixth option year.

## COUNT THIRTY-FOUR

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

577.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by

reference as though they were fully stated herein.

578.    By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

579.    DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

580.    Compliance with the TVPRA is a material requirement under The Contract.

581.    Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have exercised the option year one with DynCorp, LLC or paid the costs attributed to DynCorp, LLC's  performance under the seventh option year.

## COUNT THIRTY-FIVE

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

582.    The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

583.    By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

584.    DynCorp, LLC was not entitled to receive any costs incurred by OCN labor or recruiting services provided under the BLS operations and paid under Task Order 0004 due to violations of the TVPRA that took place during the recruiting and retention of OCN workers

providing BLS services under Task Order 0004.

585.     Compliance with the TVPRA is a material requirement under The Contract.

586.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations against the protections against trafficking in persons as noted in the TVPRA, the government would not have exercised the option year one with DynCorp, LLC or paid the resulting costs associated with DynCorp, LLC performance under the eighth option year.

### COUNT THIRTY-SIX

#### Violations of the False Claims Act
#### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

587.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

588.     By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

589.     DynCorp, LLC was not entitled to receive any Fixed Fee or Base Fee paid under Task Order 0004 between January 2, 2013 through December 1, 2019 due to violations of the FFLCA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

590.     Compliance with the FFLCA, is a material requirement under The Contract.

591.     Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the FFLCA, the government would not have paid DynCorp, LLC either the Fixed Fee or Base Fee under The Contract.

## COUNT THIRTY-SEVEN

### Violations of the False Claims Act
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

592.         The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

593.         By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

594.         DynCorp, LLC was not entitled to receive any Fixed Fee or Base Fee paid under   Task Order 0004 between January 2, 2013 through December 1, 2019 due to violations of the FFLCA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

595.         Compliance with the FFLCA is a material requirement under The Contract.

596.         Had the U.S. government been aware of the extent to which Defendants were engaged in violations of the FFLCA, the government would not have exercised the options years in 2013, 2014, 2015, 2016 or 2017.

## COUNT THIRTY-EIGHT

### Violations of the False Claims (AKA)
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

597.         The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

598.         By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

599.     DynCorp, LLC was not entitled to receive any Fixed Fee or Base Fee paid

under the Contract due to violations of the AKA that took place during the recruiting and

retention of OCN workers providing BLS services under Task Order 0004.

600.     Compliance with the AKA is a material requirement under the Contract.

601.     Had the U.S. government been aware of the extent to which Defendants were

engaged in violations of the AKA, the government would not have awarded either the Fixed Fee

or Base Fee paid for option years exercised in 2013, 2014, 2015, 2016, 2017 or 2018.

### COUNT THIRTY-NINE

### Violations of the False Claims (AKA)
### 31 U.S.C. §3729(a)(1)(A)(C)-Against DynCorp, LLC

602.     The allegations in paragraphs 1-420 are incorporated in this Paragraph by

reference as though they were fully stated herein.

603.     By virtue of the acts and omissions described above , Defendants knowingly

presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or

approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

604.     DynCorp, LLC was not entitled to receive any Award Fee or Base Fee paid

under Task Order 0004 due to violations of the AKA that took place during the recruiting and

retention of OCN workers providing BLS services under Task Order 0004.

605.     Compliance with the AKA and that of their subcontractors is a material

requirement under The Contract.

606.     Had the U.S. government been aware of the extent to which Defendants were

engaged in violations of the AKA, the government would not have modified the Contract to

provide DynCorp, LLC with any Award Fee for the base year, or option years exercised in 2010,

2011 or 2012.

## COUNT FORTY

### Violations of the False Claims (AKA)
### 31 U.S.C. §3729(a)(1)(A)(C)-Against All Defendants

607.        The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

608.        By virtue of the acts and omissions described above , Defendants knowingly presented, or knowingly caused to be presented, false and/or fraudulent claims for payment or approval by the U.S. Government, in violation of 31 U.S.C. §3729(a)(1).

609.        DynCorp, LLC was not entitled to receive any Award Fee or Base Fee paid under Task Order 0004 due to violations of the AKA that took place during the recruiting and retention of OCN workers providing BLS services under Task Order 0004.

610.        DynCorp, LLC is vicariously liable for the kickbacks between prospective OCN workers and India based agents and subcontractors for WRSS.

611.        DynCorp, LLC is vicariously liable for the kickbacks between India based agents and subagents for WRSS .

612.        DynCorp, LLC is vicariously liable for kickbacks between Dubai based recruiters and ECOLOG.

613.        DynCorp, LLC is vicariously liable for kickbacks between prospective workers and Dubai based recruiters.

614.        DynCorp, LLC is vicariously liable for the kickbacks between prospective OCN workers to India based agents for DynCorp, FZ.

615.        DynCorp, LLC is vicariously liable for the kickbacks solicited, paid and accepted by prospective OCN workers to India based agents for ECOLOG.

616.        DynCorp, LLC's compliance with the AKA, and that of their subcontractors is

a material requirement under The Contract.

617.    Had the U.S. government been aware of the extent to which Defendants were engaged in systemic violations of the AKA, the government would not have reimbursed DynCorp, LLC for the costs incurred and submitted by WRSS and DynCorp, FZ for OCN recruitment services in support of Task Order 0004..

## COUNT FORTY-ONE

### (Violations of the False Claims Act—Billing Unallowable Costs)
### 31 U.S.C. §3729(a)(1)(A)(C)-(Against All Defendants)

618.    The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

619.    Defendants knew that recruiting costs incurred by DynCorp, FZ and WRSS in violation of the protections against trafficking in persons as identified in the TVPRA were not allowable costs.

620.    DynCorp, LLC intentionally billed the government for reimbursement of these unallowable recruiting costs for the base year and all option years of the contract performance period, through December 1, 2019.

## COUNT FORTY-TWO

### (Violations of the False Claims Act—Billing Unallowable Costs)
### 31 U.S.C. §3729(a)(1)(A)(B)(C)-(Against All Defendants)

621.    The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

622.    Defendants knew the OCN workers had paid illegal kickbacks to obtain employment to perform the BLS on Task Order 0004 in violation of the AKA.  Therefore, the costs of OCN services performed and billed under Task Order 0004 were unallowable.

623.    DynCorp, LLC knowingly billed the U.S. government for reimbursement of these OCN unallowable OCN labor costs for the base year and all option years of the contract performance period, through December 1, 2019

## COUNT FORTY-THREE

**(Violations of the False Claims Act-Anti-Kickback Act of 1986)**
**31 U.S.C. §3729(a)(1)(A)(C)-(Against All Defendants)**

624.    The allegations in paragraphs 1-420 are incorporated in this Paragraph by reference as though they were fully stated herein.

625.    By virtue of their acts and omissions, DynCorp, LLC is vicariously liable for the kickbacks paid by OCN employees of ECOLOG working on The Contract.

626.    By virtue of their acts and omissions, Defendants are vicariously liable for the kickbacks paid to recruiters/agents in India by OCN workers who worked as employees of ECOLOG on The Contract.

627.    Each payment of money by the OCN worker to the recruiters/agents in India who was recruited to work on The Contract  is a separate violation of the AKA.

628.    By virtue of their acts and omissions, DynCorp, LLC is vicariously liable for the kickbacks paid by Dubai recruiters to ECOLOG to accept and  employee OCN workers on The Contract.

629.    Each payment of money to ECOLOG by a Dubai based recruiter constitutes a separate violation of the AKA.

630.    By virtue of their acts and omissions, DynCorp, LLC is vicariously liable for the kickbacks paid by OCN workers to Dubai recruiters in exchange for employment with ECOLOG under The Contract.

631.    Each payment of money to the Dubai recruiter by the OCN constitutes a

separate violation of the AKA.

632.    By virtue of their acts and omissions, Defendants' are liable for the kickbacks paid in India by the OCN worker to the subcontractors and agents of WWRS in exchange for employment on The Contract.

633.    By virtue of their acts and omissions, DynCorp, LLC is vicariously liable for the kickbacks paid in India by the OCN workers to subcontractors and agents of DynCorp, FZE in exchange for employment on The Contract.

634     Each instance of an OCN worker paying money to a recruiter or their agent constitutes a separate occurrence of a violation of the AKA.

## COUNT FORTY-FOUR

### (Violations of the False Claims Act-Materially False Records and Statements) 31 U.S.C. §3729(a)(1)(B)-Against All Defendants

635     The allegations in Paragraphs 1-420 are incorporated in this Paragraph by reference as though fully stated herein.

636     By virtue of the acts and omissions described above, Defendants agreed to make use of, and did make use of, or cause to be made use of , false records or statements to get false or fraudulent claims paid or approved by the U.S. Government, in violation of 31 U.S.C.§3729(a)(1)(B).

637.    By publishing the Zero Tolerance policy toward human trafficking on their respective websites, the Defendants were knowingly making false statements to the U.S. government regarding their compliance with the TVPRA, and implementing regulations regarding the recruitment and retention of workers.

638.    False statements and representations were knowingly made by employees and executives of DynCorp, LLC to employees of the DCMA during the conduct of multiple

investigations into trafficking in persons violations involving OCN workers providing services

under Task Order 0004. The purpose of the false statements denying any trafficking in persons

violations in the recruitment and retention of the workers was a part of the scheme to deceive

the U.S. government into believing that DynCorp, LLC was in compliance with the contract

terms, the TVPRA and AKA.

639.      False statements and representations were made to agents and employees of the

SIGAR by DynCorp, Inc. and DynCorp, LLC employees during the course of the SIGAR

investigation into human trafficking reports concerning the recruitment and retention of OCN

workers providing BLS services on Task Order 0004. The purpose of the false and misleading

statements concerning the Defendants' lack of responsibility for any TVPRA, AKA or FFLCA

violations was to conceal the scope and extent to which human trafficking was used to supply

the labor needs for BLS under Task Order 0004 and thereby, avoid responsibility and continue

performance of the scheme and The Contract.

## COUNT FORTY-FIVE
### Breach of Contract under Common Law

640.      Paragraphs 1-420 are hereby incorporated as though fully contained herein.

641.      As a result of the foregoing, DynCorp, LLC by making material

misrepresentations and omissions about its subcontractors' participation in the solicitation and

payment of kickbacks in violation of the AKA; recruiting practices in violation of the TVPRA;

and for those instances occurring after January 2, 2013, in violation of the FFLCA, DynCorp,

LLC knowingly made or caused to be made false statements and false records material to false claims

submitted to the United States under The Contract for which it was not entitled.

642.      As a result of this misconduct, the United States exercised the options years under

The Contract and paid false claims that were not entitled to be exercised.

643.     The Contract restricted DynCorp, LLC's ability to bill costs to the government. Only allowable costs were eligible to be billed and paid by the United States.

644.     DynCorp, LLC intentionally claimed reimbursement for costs under the Contract that were not allowable. DynCorp, LLC's claims for these costs constitutes a breach of The Contract.

645.     By reason of the breach, the United States suffered damages in an amount to be Determined at trial.

**COUNT FORTY-SIX**
**Unjust Enrichment Under Common Law**

646.     Paragraphs 1-420 are hereby incorporated as though fully contained herein.

647.     DynCorp, LLC received the exercise of option years exercised in 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 and 2018 to which they were not entitled due to the systemic violations of the TPVRA, AKA and for the exercise of option years in 2013 until 2018, violations of the FFLCA.

648.     DynCorp, LLC received reimbursement of vouchers for the category of recruiting costs incurred by its related entities and subcontractors, WRSS and DynCorp, FZ to which it was not entitled and unjustly enriched.

649.     DynCorp, LLC received reimbursement for the base costs and fees for option years exercised in 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 and 2018 to which it was not entitled.

650.     DynCorp, LLC received payment of for the Fixed Fees to which it was not entitled for performance in option years exercised in 2013, 2014, 2015, 2016, 2017 and 2018, and was therefore, unjustly enriched.

651.     DynCorp, LLC received Award Fees for performance of The Contract in the base year, and option years exercised in 2010, 2011 and 2012, to which they were not

entitled and therefore, unjustly enriched.

652.         As a result of the foregoing, DynCorp International, LLC, was unjustly

enriched to the detriment to the United States.

**Common Law Causes of Action**

**COUNT FORTY-SEVEN**
**PAYMENT BY MISTAKE UNDER COMMON LAW**

653.         The United States re-alleges and incorporates herein by reference

paragraphs 1 through 420.

654.         During the period of July 30, 2009 through December 1, 2019,

DynCorp LLC, has made false statements to the Department of Defense and presented

invoices for payment that contained false statements and claims;

655.         Based upon these false statements and false claims for payment, the United

States has mistakenly paid DynCorp, LLC billions of dollars.

656.         The United States paid these funds to DynCorp, LLC under the mistaken

belief that the statements made and vouchers presented and paid to DynCorp, LLC by the

United States were based upon allowable costs and under conditions that complied with the

TVPRA, AKA and for conduct occurring after January 2, 2013, the FFLCA, when they were

not. DynCorp, LLC is therefore liable to the United States for the amounts the government paid

to DynCorp, LLC together with costs and interest for monies the government would not have

paid if it had known about the systemic violations of the TVPRA, FFLCA, AKA and violations

of the 13th Amendment to the U.S. Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Realtor/Plaintiff, on behalf of himself and the United States, pray as follows:

96

**As to Counts 1-5 (Violations of False Claims Act)**:

657.        That this Court enter judgment against DynCorp, LLC in an amount equal to three times the amount of damages the U.S. sustained in regards to the Contract, Task Order 0004, including but not limited to the full value of the Award Fees paid to DynCorp, LLC under Contract Task Order 0004;

**As to Counts 6-44 (Violations of False Claims Act)**:

658.        That this Court enter judgment against all Defendants jointly and severally in an amount equal to three times the amount of damages the U.S. sustained in regards to the Contract, Task Order 0004, including but not limited to the full value of the Base Life Support Services provided by OCN workers and billed under Contract Task Order 0004;

659.        That this Court enter a judgment against DynCorp, LLC and DynCorp, Inc. for the full amount equal to three times the Award Fees paid by the United States to DynCorp, LLC for the base year, and options years exercised in 2010, 2011 and 2012 under the Contract, Task Order 0004;

660.        That this Court enter a judgment against DynCorp, LLC and DynCorp, Inc. for an amount equal to three times the Fixed Fees paid by the U.S. Government to DynCorp International, LLC for the Options years exercised in: 2013, 2014, 2015,  2016, 2017 and 2018 and the extension of services clause exercised August 1, 2019 under the Contract, Task Order 0004;

661.        That this Court enter a judgment against DynCorp, LLC and DynCorp, Inc. for an amount equal to three times the Base Fees paid by the United States to DynCorp, LLC for the performance in Option years 2013, 2014, 2015, 2016, 2017, 2018 and during the extension of services performed in 2019 under the Contract, Task Order 0004;

662.        That this Court enter a judgment against DynCorp, LLC and WRSS, Jointly and

severally for an amount equaling three times the full amount of the recruiting service costs

billed to the U.S. government during the life of the DynCorp, LLC-WRSS contract for services

in support of Task Order 0004;

663.        That this Court enter a judgment against DynCorp, LLC and

DynCorp, FZ, jointly and severally, for an amount equal to three times the total recruiting

service costs billed to the U.S. government for OCN recruiting services billed by DynCorp, FZ

during the existence of the DynCorp, LLC-DynCorp, FZ contract for services in support of

Task Order 0004.

664.        That each Defendant  be held jointly and severally liable for a civil penalty of

11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each

and every false claim it presented or caused to be presented and each false statement and record

if made or caused to be made in violation of the False Claims Act.

**As to Count Forty-Three (Violations of the Anti-Kickback Act)**

665.        In addition to the treble damages identified as False Claims Act violations,

That this Court enter Judgment against Dyncorp, LLC and WRSS  jointly and severally in an

amount equal to twice the amount of payment made by each worker to the recruiter

subcontractors of DynCorp, LLC and WRSS to receive employment in support of the Contract,

Task Order 0004;

666.        That DynCorp, LLC and DynCorp, Inc. be help jointly and severally liable for a

civil penalty not to exceed $11,000, as adjusted by the Civil Penalties Inflation Adjustment Act

of 1990, for each and every kickback paid by the OCN worker to the WRSS recruiters in India

paid to receive employment on Task Order 0004;

667.     That this Court enter Judgment against DynCorp International, LLC and
DynCorp Inc, jointly and severally, in an amount equal to twice the amount of payment made by
every OCN worker to the ECOLOG recruiter subcontractors in India to receive employment in
support of the Contract, Task Order 0004;

668.     That DynCorp, LLC and DynCorp, Inc. be help jointly and severally liable
for a civil penalty not to exceed $11,000, as adjusted by the Civil Penalties Inflation Adjustment
Act of 1990, for each and every kickback paid by the OCN worker to recruiters in India paid to
receive employment with ECOLOG on Task Order 0004;

669.     That this Court enter Judgment against DynCorp, LLC and DynCorp, Inc., jointly
and severally, in an amount equal to twice the amount of payment made to ECOLOG by Dubai
based recruiters as payment to hire the OCN workers for employment in  support of the
Contract, Task Order 0004;

670.     That DynCorp, LLC and DynCorp, Inc. be help jointly and severally liable for a
civil penalty not to exceed $11,000, as adjusted by the Civil Penalties Inflation Adjustment Act
of 1990, for each and every kickback paid by the OCN workers to recruiters in India paid resulting
in employment with ECOLOG on Task Order 0004;

671.     To pierce the corporate vail between what Defendants describe on their
websites as the members of the "DynCorp International, Inc. family"; DynCorp, Inc.,
DynCorp, LLC, DynCorp, FZ LLC and WRSS.

**As to Count Forty-Five through Forty-Seven (Common  Law Fraud)**

672.     On Count Forty-Five, DynCorp, LLC has committed a breach of the
contract with the U.S. Army and is liable for damages to be determined by the court.

673.     On Count Forty-Six and Forty-Seven,  DynCorp, LLC was paid by mistake

and was unjustly enriched, and is liable for payment of the amount of the United States' for harm resulting from defendants' conduct, together with costs and interest;

That Plaintiffs be granted all costs associated with bringing this action, and any additional amount the Court may deem just and equitable.

Dated:  October 9, 2024

Respectfully submitted,

F. Franklin Amanat (DC Bar 433779)
MOTLEY RICE LLC
800 Third Avenue, Suite 2401
New York, New York 10022
(212) 577-0052
famanat@motleyrice.com

*Counsel for Plaintiff McCahon*